904 F.2d 1269
 54 Fair Empl.Prac.Cas. 383,
53 Empl. Prac. Dec. P 40,007, 17 Fed.R.Serv.3d 244
 Larry CHAFFIN, Appellant,
v.
RHEEM MANUFACTURING CO.; United Steelworkers of America
(AFL-CIO and CLC); Local Union 7893 of the United
Steelworkers of America (AFL-CIO and
CLC), Appellees.
 No. 89-1663.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Feb. 14, 1990.
Decided June 12, 1990.
 
 Debra Armstrong-Wright, Fort Smith, Ark., for appellant.
 Michael R. Jones, Mountainburg, Ark., for appellees.
 Before BOWMAN, Circuit Judge, HEANEY, Senior Circuit Judge, and HUNTER,* District Judge.
 BOWMAN, Circuit Judge.
 
 
 1
 Larry Chaffin brought this action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Secs. 2000e to 2000e-17 (1982), against his employer, Rheem Manufacturing Company (Rheem).[1] Chaffin, who is black, claimed he was denied promotions, specifically a 1984 and a 1988 promotion, on the basis of his race. Chaffin also moved under Rule 23 of the Federal Rules of Civil Procedure for certification of a class of all black employees at Rheem who have been, or may in the future be, discriminated against by Rheem in its promotional decisions. The District Court[2] denied Chaffin's motion for class certification. After a two-day trial, the court found that (1) consideration of the 1984 promotion was barred by the 180-day limitation period contained in 42 U.S.C. Sec. 2000e-5(e) (1982); and (2) assuming Chaffin had established a prima facie case of racial discrimination regarding the 1988 promotion, Rheem presented legitimate nondiscriminatory reasons for its actions and Chaffin failed to demonstrate that these reasons were pretextual. On appeal, Chaffin argues that the District Court erred in (1) determining that consideration of the 1984 promotion was time-barred; (2) finding that Rheem's decision not to promote Chaffin in 1988 was not a violation of Title VII; and (3) denying his motion for class certification. We affirm.
 
 
 2
 Rheem manufactures residential heating and air conditioning equipment and employs approximately 1,800 to 2,000 people at its Fort Smith facility. Approximately 300 to 350 of the employees are salaried, while the remaining 1,500 to 1,700 employees are paid an hourly wage. Hourly employees are supervised by a group coordinator, a foreman, and a general foreman. Each group coordinator and foreman supervises one department, whereas the general foreman supervises several departments. At any given time, there are approximately 80 group coordinators, 54 foremen, and eight general foremen supervising Rheem's manufacturing operations.
 
 
 3
 Rheem hourly employees are governed by a collective bargaining agreement (CBA). All hourly positions are assigned a specific labor grade, ranging from grade one to grade eleven, and nonsupervisory employees are promoted to higher labor grades through a bidding process. Promotions are awarded among those who bid on a position on the basis of four factors: seniority, ability, job performance, and physical fitness. The CBA provides that, where all factors are relatively equal, seniority determines who receives the promotion.
 
 
 4
 Group coordinators are hourly employees governed by the CBA. The CBA does not provide a procedure for selecting individuals for group coordinator promotions. Evidence presented at trial indicated that when a group coordinator position becomes open, the foreman recommends one or two individuals for the job to the general foreman. The recommended candidates are reviewed by the general foreman and then the recommendation is passed up the supervisory chain to the superintendent, the production manager, and finally to the personnel office. Each person in the supervisory chain has the authority to review the recommended individual's qualifications and to suggest additional persons for consideration for the group coordinator position. Not surprisingly, the recommendation of the foreman, who has generally overseen the selected individual's job performance and who will have to work directly with the chosen group coordinator, is given considerable weight.
 
 
 5
 Except for two lay-offs due to reductions in the overall work force, Chaffin has been continuously employed at Rheem as an hourly employee for thirteen years. He has held eight positions in four departments, but has worked almost exclusively in the shear department on the second shift. Within the relevant time period, two promotions to group coordinator were made in Chaffin's department on the second shift: the first was the May 1984 promotion of John Jones, and the second was the April 1988 promotion of Tom Miner. Both these individuals are white.
 
 
 6
 Chaffin's initial charge of discrimination filed with the EEOC on August 20, 1987, alleged that he was passed over for promotion to group coordinator because of his race.[3] After receiving a letter granting him the right to sue, Chaffin commenced this action. During discovery, Chaffin was able to identify only one promotion within his department--the May 1984 promotion of Jones--for which he was qualified. After Rheem filed a motion for summary judgment, arguing that evidence pertaining to the 1984 promotion was barred by the 180-day limitation period contained in 42 U.S.C. Sec. 2000e-5(e), Chaffin amended his complaint to assert that there were numerous promotions to group coordinator made outside of his department and that he was not considered for these positions because of his race. Prior to trial, Chaffin filed a second charge with the EEOC and amended his complaint again to contend that he was denied a promotion to group coordinator in April 1988 because of his race.
 
 I.
 
 7
 The timely filing of a charge of discrimination with the EEOC is a jurisdictional prerequisite to court action under Title VII. United Air Lines v. Evans, 431 U.S. 553, 555 n. 4, 97 S.Ct. 1885, 1887 n. 4, 52 L.Ed.2d 571 (1977). A complaint is timely when "filed within one hundred and eighty days after the alleged unlawful employment practice occurred." 42 U.S.C. Sec. 2000e-5(e). Chaffin's initial EEOC charge, alleging that Rheem's 1984 promotion of Jones instead of Chaffin constituted racial discrimination, was filed more than three years after the promotion occurred. The District Court found that consideration of this claim was therefore barred. Chaffin concedes that the charge was filed outside the 180-day limitation period, but argues that his August 20, 1987, EEOC charge should be deemed timely, nonetheless, either because Rheem's alleged Title VII violation was continuing, or equitable considerations require that the limitation period be tolled. We disagree.
 
 
 8
 This Court has recognized that, in certain circumstances, where appellant challenges an ongoing pattern or practice of discrimination rather than one isolated instance, the alleged violation may be deemed continuing. Satz v. ITT Fin. Corp., 619 F.2d 738, 743 (8th Cir.1980) (reversing district court's grant of summary judgment for ITT because Satz alleged a continuing pattern of disparate treatment between herself and male employees in regard to pay, training, opportunities for advancement, and job assignments); see also Smith v. Office of Economic Opportunity, 538 F.2d 226, 228-29 (8th Cir.1976) (finding that alleged discriminatory refusal to hire was isolated act of discrimination rather than continuing violation, and stating that to hold otherwise would do violence to the policies underlying the limitation period of Title VII). A violation is not continuing merely because the effects of an allegedly discriminatory action continue to be felt over a period of time. See Heymann v. Tetra Plastics Corp., 640 F.2d 115, 120 (8th Cir.1981) (allegedly discriminatory initial job assignment does not constitute continuing violation even though employee remained at the position for over a year).
 
 
 9
 In support of his contention that Rheem engaged in a continuing pattern of racial discrimination in its promotional decisions, Chaffin argues, as he did at trial, that there were several group coordinator promotions made outside of his department and he was not considered for these promotions because of his race. The District Court, however, specifically found Chaffin's contention that he was denied promotions outside his department because of his race to be without merit. The evidence at trial was undisputed that a group coordinator must be familiar with the equipment, machinery, and procedures within his department. One of the group coordinator's principal duties is to substitute for individuals who are absent and, therefore, the ability to operate each piece of machinery in the department is an important qualification for the position. While Chaffin presented evidence of several employees who were promoted to group coordinator outside of their department, the District Court found that these instances generally involved a promotion to a group coordinator position in a distinct but similar department, such as from one paint department to another, or involved an individual who had prior experience in the department to which he was promoted. Chaffin presented no evidence to show that he had the requisite experience to supervise any department other than the shear department in which he worked.
 
 
 10
 The District Court concluded that Chaffin's allegation of a continuing pattern of racial discrimination was unsupported by the evidence and we cannot say that the District Court's finding in this regard is clearly erroneous. Chaffin's claim alleges an isolated act of racial discrimination which occurred more than three years prior to the filing of his original EEOC charge. The District Court properly determined that this untimely claim cannot be saved by the continuing violation theory that Chaffin asserts.
 
 
 11
 Chaffin's related contention that equitable considerations require that the limitation period be tolled is equally without merit. This Court has held that the time limitation contained in Title VII
 
 
 12
 will not be tolled on the basis of equitable estoppel unless the employee's failure to file in a timely fashion is the consequence either of a deliberate design by the employer or of actions that the employer should unmistakably have understood would cause the employee to delay filing his charge.
 
 
 13
 Kriegesmann v. Barry-Wehmiller Co., 739 F.2d 357, 358-59 (8th Cir.1984) (quoting Price v. Litton Business Syss., 694 F.2d 963, 965 (4th Cir.1982)). Chaffin presented no evidence of any design or action by Rheem that caused him to delay filing his charge of discrimination with the EEOC. His argument that the 180-day limitation period should be equitably tolled therefore must fail.
 
 
 14
 Chaffin's claim that Rheem failed to promote him in 1984 because of his race was untimely and therefore properly was rejected by the District Court.
 
 II.
 
 15
 We now turn to Chaffin's timely filed claim that he was denied a promotion in April 1988 as a result of racial discrimination.
 
 
 16
 In a Title VII case, the plaintiff bears the initial burden of demonstrating by a preponderance of the evidence a prima facie case of racial discrimination. Once that showing has been made, the employer can rebut the prima facie case by coming forward with legitimate nondiscriminatory reasons for its actions. The burden then shifts back to the plaintiff to prove by a preponderance of the evidence that the employer's articulated reasons are in reality a pretext for unlawful discrimination. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Despite these shifting burdens, the plaintiff retains throughout the case the ultimate burden of persuading the trier of fact that the employer discriminated against him. Texas Dep't. of Community Affairs v. Burdine, 450 U.S. 248, 252-53, 101 S.Ct. 1089, 1093-94, 67 L.Ed.2d 207 (1981).
 
 
 17
 At trial, Harold Johnson, the shear department foreman on the second shift, testified that, in April 1988, he considered Miner and Chaffin for promotion to the group coordinator position. In his opinion, both men were relatively equally qualified for the position in terms of their operational skills. Johnson stated that, after reviewing the personnel files of Chaffin and Miner, he recommended Miner for group coordinator over Chaffin because of Miner's superior attendance record. Between March 1978 and June 1983, Chaffin received six written and four oral warnings with regard to attendance deficiencies, one written warning concerning his job performance, and a three-day disciplinary lay-off. Over the next several years, Chaffin had no attendance problems, and even received an attendance award. On October 29, 1987, however, Chaffin received an additional oral warning for attendance deficiencies. As a result of union complaints regarding a new stricter attendance policy, and as part of a negotiated settlement of that issue, this warning was subsequently expunged from Chaffin's personnel file. At the time of the 1988 promotion, however, the warning remained a matter of record and was considered by management. Conversely, Miner had received no warnings or disciplinary sanctions regarding his attendance or job performance.
 
 
 18
 According to Johnson and others who testified, including Chaffin himself, regular attendance is arguably the single most important qualification for the position of group coordinator. This is so because the group coordinator's principal duty is to act as foreman when the foreman is absent and to operate the equipment when an employee is absent. Johnson testified that Chaffin's history of attendance problems was the principal reason he did not recommend Chaffin for promotion.
 
 
 19
 On Johnson's recommendation, Roger Lee, Industrial Relations Manager and EEOC Coordinator, took Miner's name to Hal Boyette, the resident plant manager, for approval. Because of Chaffin's charge of racial discrimination filed with the EEOC in 1987 and his pending lawsuit, Boyette directed Lee to reconsider the decision and to reexamine the personnel files of Miner and Chaffin. Lee stated that he did so, concluded that Miner's clean attendance record made him more qualified, and returned the files to Boyette. Lee pointed out to Boyette that the average number of disciplinary actions per person promoted to group coordinator is less than one, while Chaffin had eleven warnings, although only one was recent. Boyette independently evaluated the personnel files and agreed that Miner was better qualified for the position, although he indicated at trial that promoting Chaffin would have been "the easy way out," Trial Transcript at 580, meaning that he knew Rheem would have to justify its decision at a later date in the course of Chaffin's lawsuit.
 
 
 20
 Chaffin concedes both that the evidence presented regarding his attendance problems was accurate and that attendance is an appropriate factor for management to consider in selecting a group coordinator. The bulk of Chaffin's case focused on the alleged racial prejudice of Chaffin's former general foreman, Cornelius Maciejack. Maciejack was the general foreman of the shear and several other departments from February 1977 to January 1, 1987. As such, he reviewed all recommendations for promotion to group coordinator in the departments he supervised. We note, however, that Maciejack retired more than three months prior to the April 1988 promotion which Chaffin claims was denied him because of his race.
 
 
 21
 At trial, there was considerable testimony concerning Maciejack's racial attitudes. Johnson testified that Maciejack used the word "nigger" on occasion when referring to black employees. Lisa Gould, a computer operator in the press department whose desk was located in the press office, testified that she overheard Maciejack direct Johnson to "nail the nigger," Trial Transcript at 210, referring to another black employee, Fred Jackson, for anything Johnson could get him on. Gould also overheard Maciejack state that Laurel Sterling, a white female employee married to a black man and pregnant at the time, should be kicked in the stomach and caused to abort. Interestingly, Sterling was promoted shortly after this comment allegedly was made. According to Gould, Maciejack often used the term "nigger," indicated that he thought cross burnings were a good idea, always inquired about the race of persons involved in employment decisions, and seemed to be more lenient with white employees.
 
 
 22
 Gould also testified that she overheard Maciejack tell Jerry Poole, a foreman in one of Maciejack's departments who recommended a female employee for promotion, that he did not want another woman or black in the position of group coordinator. Maciejack admitted making this statement, but explained that it was made in jest in order to annoy Poole. Maciejack subsequently approved the promotion of the recommended female employee as he testified he always intended to do.
 
 
 23
 In his testimony, Maciejack conceded that he made most of the statements testified to by Gould. He stated that the comments were ill-advised, not seriously intended, and made in poor taste for their effect. Maciejack testified that he was not a bigot, but could understand why some people might believe otherwise. The District Court found that Maciejack was instrumental in the promotion of several blacks to the position of group coordinator. Maciejack actively sought Jackie Johnson, a black, for the position of foreman and assisted him in attaining that position. Maciejack also participated in and approved the promotion of several women employees.
 
 
 24
 The District Court characterized Maciejack's comments as "shocking and reprehensible," Memorandum Opinion at 22, and we echo these sentiments. Chaffin may not rely on these racial slurs alone, however, to establish a violation of Title VII. First, Maciejack was no longer employed at Rheem when the April 1988 promotion was made. Second, the record is clear that Lee and Boyette made the ultimate decision regarding the promotion after giving Chaffin's qualifications special consideration.
 
 
 25
 Assuming that Chaffin established a prima facie case of racial discrimination, the District Court found that Rheem articulated a legitimate non-discriminatory reason, namely Chaffin's history of attendance problems, for the promotion of Miner rather than Chaffin. The court further found that Chaffin failed to prove by the preponderance of the evidence that Rheem's reliance on his attendance record was a pretext for racial discrimination. We do not believe these findings are clearly erroneous. The evidence was undisputed that Chaffin and Miner were equally qualified for the group coordinator position in terms of their job skills. Chaffin had numerous warnings for past attendance deficiencies, while Miner had none. It therefore is clear to this Court, as it was to the District Court, that Rheem management was entitled to consider Miner more qualified than Chaffin for promotion to group coordinator. Chaffin has failed to demonstrate that Rheem's decision not to promote him in April 1988 was a violation of Title VII.
 
 
 26
 Chaffin next argues that the District Court erred in failing to consider this case a "mixed-motive" case under this court's holding in Bibbs v. Block, 778 F.2d 1318, 1323-24 (8th Cir.1985) (en banc). We note, however, that the mixed-motive analysis of Bibbs recently has been modified by the United States Supreme Court. The Court held that once a plaintiff proves that an employer considered a factor prohibited by Title VII in an employment decision, the employer may avoid liability by proving by a preponderance of the evidence that its decision would have been the same absent any impermissible considerations. Price Waterhouse v. Hopkins, --- U.S. ----, 109 S.Ct. 1775, 1795, 104 L.Ed.2d 268 (1989). The District Court found in any event that a mixed-motive analysis was not warranted in this case because Chaffin failed to demonstrate that race played any part in Rheem's decision not to promote him. The court found that Chaffin's race and his prior claims of racial discrimination were known and considered by Rheem management. Rheem's awareness of these factors, however, worked only to Chaffin's advantage as it gained him special consideration and a second chance at a promotion for which he was not originally recommended. We agree with the District Court's finding that the facts of this case do not support a mixed-motive analysis and, thus, Price Waterhouse is inapplicable.
 
 III.
 
 27
 Chaffin's final claim is that the District Court erred in not allowing him to maintain a class action on behalf of all past, present, and future black employees of Rheem allegedly adversely affected by Rheem's promotion procedure. We review a district court's denial of class certification under the abuse of discretion standard. Belles v. Schweiker, 720 F.2d 509, 515 (8th Cir.1983).
 
 
 28
 After holding a certification hearing, the Magistrate concluded that Chaffin failed to meet the typicality requirement of Fed.R.Civ.P. 23(a)(3) because Chaffin's "anecdotal and statistical evidence did not raise the inference that a practice/pattern/policy of race discrimination pervades Rheem's promotion practices." Magistrate's Proposed Findings and Recommendations at 4.[4] Chaffin argues that the District Court erred in denying Chaffin's motion for class certification because the Magistrate's analysis constituted an impermissible premature inquiry into the merits of Chaffin's claim. We are satisfied that the District Court's ruling denying class certification was not an abuse of discretion.
 
 
 29
 Rule 23(a)(3) requires that the "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." This Court long ago defined typicality as requiring "a demonstration that there are other members of the class who have the same or similar grievances as the plaintiff." Donaldson v. Pillsbury Co., 554 F.2d 825, 830 (8th Cir.), cert. denied, 434 U.S. 856, 98 S.Ct. 177, 54 L.Ed.2d 128 (1977); see Tate v. Weyerhaeuser, 723 F.2d 598, 608 (8th Cir.1983), cert. denied, 469 U.S. 847, 105 S.Ct. 160, 83 L.Ed.2d 97 (1984); Paxton v. Union National Bank, 688 F.2d 552, 562 (8th Cir.1982), cert. denied, 460 U.S. 1083, 103 S.Ct. 1772, 76 L.Ed.2d 345 (1983). A demonstration of typicality "require[s] something more than general conclusory allegations that unnamed blacks have been discriminated against." Paxton, 688 F.2d at 562.
 
 
 30
 At the certification hearing, Chaffin presented statistical evidence indicating that 71.8 permanent promotions occurred in the production area at Rheem between 1984 and 1987, and that, based on the estimated percentage of black employees in production, 4.5 promotions would be expected to go to blacks. In fact, only two blacks were promoted during that period. Chaffin's expert provided data to support the conclusion that blacks were successful in bidding into positions below group coordinator under the objective job criteria utilized in job bidding. In 1987, for example, seven percent of the total production employees were black and twenty-four percent of these blacks had achieved the highest level position below group coordinator. Chaffin also stated that, in the thirteen years that he has been at Rheem, only four to five blacks have been promoted to group coordinator and only one has reached the position of foreman. Chaffin was unable to name more than one or two other black employees who he felt also might have been discriminated against in promotional decisions, and no details were brought out at the certification hearing regarding either of these persons.
 
 
 31
 The Magistrate determined, and the District Court agreed, that Chaffin's statistical evidence did not demonstrate the existence of a class of individuals with grievances similar to Chaffin's under either a disparate treatment or disparate impact analysis. See Watson v. Fort Worth Bank & Trust, 487 U.S. 977, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988). In reaching its conclusion, the court stated:
 
 
 32
 By defining the common question in this case as whether Rheem's practice of advancing promotions to leadman positions and above based on subjective factors is discriminatory to black employees in treatment/impact, we reviewed the evidence in support of class certification to determine if we could infer that discriminatory treatment/impact is typical of Rheem's promotion practices.
 
 
 33
 Magistrate's Proposed Findings and Recommendations at 6-7 (footnote omitted). As Chaffin presented no evidence of other black individuals alleged to have been discriminated against, the court looked to see if Chaffin's evidence at least suggested that Rheem typically engaged in racially discriminatory promotion practices in order to discern whether other black employees were similarly situated to Chaffin. The court concluded that Chaffin's claims of disparate treatment were primarily claims of racial discrimination individual to him and, as such, did not support a class action. See General Tel. Co. of Southwest v. Falcon, 457 U.S. 147, 159, 102 S.Ct. 2364, 2371, 72 L.Ed.2d 740 (1982) ("If one allegation of specific discriminatory treatment were sufficient to support an across-the-board attack, every Title VII case would be a potential companywide class action."). We have no difficulty concluding that the District Court did not abuse its discretion in denying Chaffin class certification based on disparate treatment.
 
 
 34
 The court further found that Chaffin's statistical data was "too bareboned, in our view, to allow us to infer to any degree the existence of a pattern or practice affecting a class of protected employees." Magistrate's Proposed Findings and Recommendations at 7. See Watson, 108 S.Ct. at 2788-89 (to attack subjective employment decisions based on disparate impact "plaintiff must offer statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs or promotions because of their membership in a protected group"). We are satisfied that the District Court's analysis of the statistical evidence offered by Chaffin was appropriate and, after reviewing the evidence, we cannot say that the District Court's denial of class certification based on disparate impact was an abuse of discretion.
 
 IV.
 
 35
 Finding no merit in the issues raised on appeal, we affirm the judgment of the District Court.
 
 
 
 *
 The HONORABLE ELMO B. HUNTER, Senior United States District Judge for the Western District of Missouri, sitting by designation
 
 
 [1]
 Although United Steelworkers of America and Local Union 7893 of the United Steelworkers of America were named as joint defendants by Chaffin, the District Court held that the Union could not be joined as a party during the liability phase of this litigation. The Union, therefore, has not participated in this case either in the trial below or on appeal
 
 
 [2]
 The Honorable H. Franklin Waters, United States District Judge for the Western District of Arkansas
 
 
 [3]
 The charge also alleged that Chaffin was required to perform the duties of group coordinator on a temporary basis but was not paid the wages of a group coordinator, and that Chaffin was harassed by the foreman and general foreman who followed him around the plant. These claims were found to be meritless at trial and are not raised on appeal
 
 
 [4]
 The Magistrate initially concluded that Chaffin failed to establish numerosity as required by F.R.C.P. 23(a)(1) after deciding that the number of potential class members should be determined by the group coordinator promotions awarded in the six-month period prior to the first charge filed with the Equal Employment Opportunity Commission (EEOC). After Chaffin filed his objections to the Magistrate's findings, the District Court remanded the case to the Magistrate for reconsideration of Chaffin's argument that the potential class should be defined as the total number of current black employees at Rheem. On reconsideration, the Magistrate accepted the definition of the potential class urged by Chaffin