Lois E. JENSON, Patricia S. Kosmach, and Kathleen O'Brien Anderson, on their own behalf and on behalf of all others similarly situated,

v.

EVELETH TACONITE COMPANY, Eveleth Expansion Company, Oglebay Norton Company, and Oglebay Norton Taconite Company, doing business as Eveleth Mines, and the United Steel Workers of America, Local 6860.

Civ. No. 5–88–163.

United States District Court,
D. Minnesota,
Fifth Division.

Dec. 16, 1991.

658

Paul C. Sprenger, Sprenger & Lang, Minneapolis, Minn. and Jane Lang, Sprenger & Lang, Washington, D.C., for plaintiffs.

Raymond L. Erickson, Hanft, Fride, O'Brien, Harries, Swelbar & Burns, Duluth, Minn., for defendants Eveleth Expansion, Eveleth Taconite, Oglebay Norton, and Oglebay Norton Taconite.

John G. Engberg, Peterson, Engberg & Peterson, Minneapolis, Minn., for defendant United Steel Workers Union.

## ORDER

ROSENBAUM, District Judge.

Plaintiffs in this putative class action lawsuit move for class certification, pursuant to Rule 23, Federal Rules of Civil Procedure (Fed.R.Civ.P.), alleging discrimination on the basis of gender, in violation of both Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., and the Minnesota Human Rights Act, Minnesota

Statutes, §§ 363.01–.15.[1] At the same time, plaintiffs seek a preliminary injunction directing defendants to adopt and enforce a policy for the prevention of sexual harassment. Finally, plaintiffs move to consolidate consideration of the class issues with trial on the merits.[2] The Court heard this matter over the course of seven days between May 13, 1991, and June 3, 1991.

For the reasons set forth herein, plaintiffs' motion is granted in part and denied in part.

## I. *Background*

The named defendants include Eveleth Taconite Company, Eveleth Expansion Company, Oglebay Norton Company, and Oglebay Norton Taconite Company (collectively, "Eveleth Mines"). Eveleth Mines owns and conducts a taconite mining operation in Eveleth, Minnesota. Defendant United Steel Workers of America is the certified bargaining representative of a unit of Eveleth Mines employees. Plaintiffs press no separate claims against the union which is joined as a defendant for the sole purpose of obtaining full equitable relief. Amended Complaint, at 3.

Plaintiff Lois Jenson was hired by Eveleth Mines in March, 1975, and remains employed there to this date. Plaintiff Kathleen O'Brien Anderson was hired at Eveleth Mines in July, 1976, and continues her employment today. Plaintiff Patricia Kosmach was employed at Eveleth Mines from January, 1976, through October, 1988. All three women worked as laborers.

Plaintiffs charge that Eveleth Mines engages in a pattern of discriminatory practices, including discrimination in hiring, job assignment, discipline, promotion, and compensation.[3] Plaintiffs also allege gender discrimination based on environmental sexual harassment—a hostile work environment. Plaintiffs seek damages, injunctive relief, and attorneys' fees.

## II. *Analysis—Class Action Motion*

Pursuant to Rules 23(a) and 23(b)(2), Fed. R.Civ.P., plaintiffs seek to certify and represent a class of:

All women who have been employed by, applied for employment with, or were deterred from applying for employment with Eveleth Mines at any time since December 30, 1983, or who may in the future be employed by or apply for employment with Eveleth Mines, and who have been, are being, or as the result of the operation of current practices, will be discriminated against in hiring and with regard to the terms and conditions of their employment because of their sex.

Plaintiff's Motion to Certify the Class, at 2.

■ As the party seeking certification, plaintiffs bear the burden of showing that Rule 23's prerequisites have been satisfied. *Smith v. Merchants & Farmers Bank,* 574 F.2d 982, 983 (8th Cir.1978). The Court may certify a class action only if it is satisfied "after rigorous analysis," that the prerequisites have been fulfilled. *General Tel. Co. of the Southwest v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982). The Court may also certify a class as to one or more claims without certifying the entire complaint. Fed.R.Civ.P. 23(c)(4).

As a preliminary matter, plaintiffs must establish that a defined class exists and that the class representatives fall within the class. *East Texas Motor Freight System, Inc. v. Rodriguez,* 431 U.S. 395, 403, 97 S.Ct. 1891, 1896, 52 L.Ed.2d 453 (1977);

---

**1.** The Minnesota Supreme Court applies Title VII principles in construing the Minnesota Human Rights Act. *Hubbard v. United Press International, Inc.,* 330 N.W.2d 428, 441 (Minn.1983). As such, the Court will analyze the federal and state claims simultaneously.

**2.** The Court denied plaintiffs' request to consolidate the class certification hearing with trial on the merits. The hearing, however, was conducted pursuant to a stipulation whereby evidence heard at the class certification stage may be considered in the trial on the merits. *See* Fed. R.Civ.P. 23(d)(1).

**3.** Plaintiff Jenson filed a charge of discrimination with the Minnesota Department of Human Rights and the Equal Employment Opportunity Commission (EEOC) on October 26, 1984. Plaintiff Anderson filed a charge with the EEOC on November 11, 1988. Plaintiff Kosmach filed a charge with the EEOC on April 13, 1988.

*Roby v. St. Louis Southwestern Ry. Co.,* 775 F.2d 959, 961 (8th Cir.1985). If these implicit requirements are fulfilled, plaintiffs must satisfy the explicit requirements of Rule 23 and show:

> 1) numerosity—the class is so numerous that joinder of all members is impracticable;
>
> 2) commonality—there are questions of law or fact common to the class;
>
> 3) typicality—the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> 4) adequacy—the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a)(1)–(4).

Finally, plaintiffs must demonstrate that their action falls within one of the three categories listed in Rule 23(b). *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 163, 94 S.Ct. 2140, 2145–46, 40 L.Ed.2d 732 (1974). Here, plaintiffs seek certification under 23(b)(2), which requires that:

> the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole. . . .

Fed.R.Civ.P. 23(b)(2).

### A. *Implicit Criteria*

#### 1. Defined Class:

■ To satisfy the implicit requirements of Rule 23, plaintiffs must bridge the "wide gap" between individual claims and classwide claims. *Falcon,* 457 U.S. at 157–58, 102 S.Ct. at 2370–71. Here, plaintiffs must make an affirmative showing, beyond their individual claims, that discrimination has been suffered by the proposed class.

*Chaffin v. Rheem Manufacturing Co.,* 904 F.2d 1269, 1276 (8th Cir.1990).

Plaintiffs' complaint alleges gender discrimination in hiring and in various terms and conditions of employment, and by the existence of a hostile work environment. In support of their motion, plaintiffs offered statistical, affidavit, deposition, and in-court testimony. The Court will address each set of claims individually.

#### a. *Failure to Hire:*

Plaintiffs submitted statistical evidence that women were not hired at Eveleth Mines because of their gender. The evidence showed, for example, that Eveleth Mines hired 159 people into non-temporary hourly jobs between 1981 and 1990. Two of those hired, 1.3%, were women.[4] Of the 47 people hired as laborers, one was a woman. Plaintiffs then offered data to demonstrate that, in the absence of gender-based discrimination, and depending on the available "hiring pool,"[5] Eveleth Mines would have hired from 8 to 13 women as laborers during that period.

■ Plaintiffs also submitted anecdotal evidence that the application and hiring procedures at Eveleth Mines were predominantly subjective. The evidence showed that Eveleth Mines obtains prospective employees from walk-ins and direct referrals made by incumbent employees, the vast majority of whom are male. Little or no advertising is done for job openings. Hiring decisions are made by the personnel office using no written guidelines to evaluate relevant experience, education, or training. In plaintiffs' view, this subjective process is susceptible to gender bias.[6]

Defendants challenged plaintiffs' statistical analysis, claiming gender was not a factor in the hiring decisions made at Evel-

---

**4.** Plaintiffs also offered a number of other numerical comparisons of women and men hired into the workforce at Eveleth Mines. The Court will not address each of these statistical comparisons, as the specific disparities are issues more suitable to consideration on the merits.

**5.** Plaintiffs offered evidence based on "pools" of actual applicants, women laborers, and unemployed in five surrounding counties, women laborers and unemployed in nine surrounding cities, and women laborers and unemployed in St. Louis County.

**6.** While statistical evidence alone may not be sufficient to establish a prima facie case of discrimination, statistical evidence bolstered by anecdotal evidence may suffice. *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 339, 97 S.Ct. 1843, 1856, 52 L.Ed.2d 396 (1977).

eth Mines.[7] At this threshold stage, however, the Court does not require certain proof of the merits of plaintiffs' claims. *Eisen*, 417 U.S. at 177, 94 S.Ct. at 2152. For certification purposes, the Court is simply concerned with whether a class exists. Based on plaintiffs' preliminary showing of significant under-representation of women in the workforce at Eveleth Mines and the subjective nature of the hiring process, the Court finds that a defined class of female job applicants exists.

### b. Terms and Conditions of Employment:

Plaintiffs claim that Eveleth Mines discriminated against women in a number of terms and conditions of employment, including job assignment, discipline, promotion, and compensation.

Plaintiffs produced affidavits and testimonial evidence to support their allegations that women are not promoted,[8] are discouraged from obtaining training for higher paying skilled jobs,[9] are assigned less desirable duties,[10] and are disciplined more harshly than male employees.[11] Plaintiffs

claim that, partially as a result of these practices, women, as a group, are paid less than men at Eveleth Mines.[12]

Defendants admit the facts of many of these assertions, but state that legitimate factors explain them.[13] In the Court's view, these arguments go to the merits of plaintiffs' claims. At this class certification stage, the Court simply notes the conflict and postpones resolution for another day.

Defendants also argued that collective bargaining agreements between Eveleth Mines and its hourly employees preclude discrimination based on subjective decision-making. The collective bargaining agreements do exist, and they contain extensive written regulations governing job classifications and certain promotion procedures. Such agreements necessarily inject a modicum of objectivity into decision-making. But the evidence, thus far, suggests that subjective procedures involving management discretion continue to determine step-up foremen selection, apprentice candidate selection, overtime administra-

7. Defendants also offered evidence that the economic climate on the Iron Range was seriously depressed in the 1980's. Specifically, the workforce at Eveleth Mines was reduced from 1460 workers in 1981 to 750 workers in 1991. Plaintiffs, however, offered evidence that women were under-represented in the workforce both before and after the reduction of the workforce.

8. Plaintiffs submitted evidence that women were not selected to serve as temporary "step-up" foremen. These positions are not posted and no application procedures exist. According to the evidence, of the 230 step-up foremen selected between 1981 and 1990, none—zero—were women. The Court observes that no "fine tuning" of statistics can obscure the inference of discrimination raised by the "inexorable zero." *Teamsters*, 431 U.S. at 342, n. 23, 97 S.Ct. at 1858 n. 23. Plaintiffs suggested that women, including the named plaintiffs, were available for these positions. It is plaintiffs' position that excluding women from step-up foremen positions effectively excludes women from permanent foremen positions as well. Ninety-six percent of the foremen selected from 1981 through 1990 had previously served as step-ups.

Women also testified that they did not receive "bump-up" training to qualify for the next job in the line of progression. Supervisors and foremen decide who receives "bump-up" training. The evidence indicated that one woman was

told that the next job in her progression was "unsafe for women."

9. As of 1990, no women were placed in managerial or professional positions. Only one woman has ever held a skilled craft job. Plaintiff Kosmach testified that she was discouraged from applying for skilled job training.

10. Plaintiff Jenson alleged that she was given less desirable tasks, often requiring clean-up duties, than her male co-workers with less seniority. Jenson testified that she was told that women were better at clean-up than men. Another witness testified that she was consistently assigned to less desirable equipment than her male peers.

11. Plaintiff Jenson testified that she received more severe discipline than men for comparable "unsafe procedures."

12. Step-up foremen earn premium pay above the regular hourly rate.

13. For example, defendants argued that there are no women step-up foremen because there are no women in the more skilled job assignments. Defendants then suggested that women are not trained for the crafts or skilled positions because they do not want the training. Plaintiffs offered contrary testimony and affidavits.

tion, on-site duty assignment, and employee discipline.

Moreover, the Court heard testimony suggesting that women were systemically disinclined to use potential remedies contained in the collective bargaining agreements.[14] As such, the Court finds that the mere existence of collective bargaining agreements containing grievance procedures and objective standards for some terms and conditions of employment does not preclude plaintiffs' claims that discrimination affected other terms and conditions of employment at Eveleth Mines.[15]

The Court finds that plaintiffs have submitted sufficient evidence to identify a defined class for gender discrimination claims in promotion, discipline, and job assignment.

### c. Hostile Work Environment:

Plaintiffs claim that Eveleth Mines discriminated against women by allowing, and in some instances promoting, a hostile work environment directed toward its female employees. Plaintiffs submitted evidence concerning various incidents of sexual harassment, ranging from open display of pictures of nude females to incidents of physical harassment.[16] Defendants argued in response that sexual harassment claims cannot be made on a class-wide basis.

In *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), the Supreme Court held that gender discrimination which creates a hostile or abusive work environment violates Title VII.[17] Even in the case of a single plaintiff, evidence of sexual harassment directed at employees other than the individual plaintiff may be relevant to show a hostile work environment. *Hall v. Gus Construction Co., Inc.,* 842 F.2d 1010, 1015 (8th Cir.1988).[18]

Plaintiffs do not purport to raise individual claims of sexual harassment. Rather, plaintiffs advance the view that incidents of sexual harassment constitute but one facet of their discrimination claims. They argue that the systemic offenses were so pervasive as to create an "oppressive work environment." Moreover, plaintiffs do not seek damages based on individual incidents of harassment, but instead seek class-wide injunctive, declaratory, and financial relief.[19]

The Court recognizes that Eveleth Mines is a mining and taconite-forming operation and that "Title VII does not mandate an employment environment worthy of a Victorian salon." *Hall,* 842 F.2d at 1017. White gloves, crystal, and fine china are neither required nor expected. In this

**14.** According to plaintiffs, women were reluctant to file grievances for several reasons. Women employees were discouraged by lack of union response when problems were reported, feared retaliation from co-workers, and, in some instances, would be required to report the incident to the very person who had allegedly engaged in other discriminatory conduct.

**15.** The Court makes explicit its finding that freedom from discrimination is not a contract right subject to collective bargaining. Plaintiffs seek to enforce statutory rights in this lawsuit, rights which bind both labor and management.

**16.** The Court also heard amazingly inconclusive "evidence" from purported experts on the effects of sexual stereotyping in the workplace. These experts disagreed on whether or not sexual stereotyping was present at Eveleth Mines. They disagreed on whether or not sexual stereotyping causes discrimination and/or harassment. They disagreed on whether or not employers can alter the effects of sexual stereotyping in the workplace. For purposes of class

certification, these issues need not be resolved and the Court declines to do so.

**17.** Guidelines issued by the EEOC define hostile environment harassment as "conduct [which] has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment." 29 C.F.R. § 1604.-11(a)(3).

**18.** The Court notes that "hostile environment" claims are classified as one form of "sexual harassment." *Meritor,* 477 U.S. at 67, 106 S.Ct. at 2405–06. The Court will use the terms interchangeably, while recognizing that plaintiffs' evidence was limited to demonstrating a "hostile environment."

**19.** Regardless of whether Title VII recovery is awarded under a theory of environmental sexual harassment or a theory of disparate treatment, plaintiffs may seek reinstatement, back pay, and attorneys' fees. 42 U.S.C. § 2000e–5(g).

case, however, the Court heard evidence of pervasive offensive conduct. Sexually explicit graffiti and posters were found on the walls and in lunchroom areas, tool rooms, lockers, desks, and offices. Such material was found in women's vehicles, on elevators, in women's restrooms, in inter-office mail, and in locked company bulletin boards.[20]

Women reported incidents of unwelcome touching, including kissing, pinching, and grabbing. Women reported offensive language directed at individuals as well as frequent "generic" comments that women did not belong in the mines, kept jobs from men, and belonged home with their children. The Court finds this evidence sufficient to demonstrate that a defined class exists as to plaintiffs' claims for sexual harassment.

This Court finds, for class certification purposes, that plaintiffs have "bridged the gap" between their individual claims and putative class claims as to hiring practices, terms and conditions of employment, and sexual harassment. As such, plaintiffs have succeeded in establishing the existence of a defined class.

### 2. Plaintiffs are Members of Defined Class:

Rule 23(a) provides in part that "one or more members of a class" may sue as representative parties. As such, the second implicit requirement in Rule 23 is that plaintiffs be members of the defined class,[21] and have the same interest and suffer the same injury as the class represented. *Falcon*, 457 U.S. at 156, 102 S.Ct. at 2369–70.

### a. Failure to Hire:

Defendants argue that, because the named plaintiffs are current or past employees, their claims cannot include claims for discriminatory treatment of applicants. They cite *Falcon*, 457 U.S. at 158–59, 102 S.Ct. at 2371, where the Supreme Court held that employee class claims could not fairly include applicant class claims. The *Falcon* court, however, specifically reserved the possibility that a class of both applicants and employees could be justified if an employer "operated under a general policy of discrimination ... and the discrimination manifested itself in hiring and promotion practices in the same general fashion, such as though entirely subjective decision-making processes." *Falcon*, 457 U.S. at 159, n. 15, 102 S.Ct. at 2371, n. 15.

Here, plaintiffs have offered substantial evidence suggesting under-representation of women in the workforce as a whole,[22] in skilled jobs, and in promotional positions, and particular evidence of pervasive sexual harassment. The Court finds that, for class certification purposes, this evidence is sufficient to support an inference that discrimination was manifested against women in hiring practices as well as in treatment on the job. Defendants' contrary evidence raises issues which must be resolved on the merits.

### b. Terms and Conditions of Employment:

It does not appear to be seriously contested that the named plaintiffs, as past or current employees of Eveleth Mines, were subjected to whatever conditions existed in the workplace.[23] Thus, the named plain-

---

**20.** Defendants acknowledged the existence of pervasive sexually explicit material, but claimed they received no complaints about it. Defendants pointed to no case law recognizing lack of protest as a defense.

**21.** The Court notes the "close and uncertain relationship" between this implicit requirement of Rule 23(a) and the explicit requirement of Rule 23(a)(4) that representatives must adequately protect the interests of class members. 7A Wright, Miller and Kane, *Federal Practice and Procedure*, § 1761 (2d ed. 1986). The Court will address the independent, if arguably duplicative, requirements of 23(a)(4) in due course.

**22.** Women comprised approximately 5% of the entire workforce at Eveleth Mines from 1981 through 1990.

**23.** Defendants argued that named plaintiffs, as hourly workers, cannot represent salaried workers. The Court declines to distinguish between these two groups of workers at this point in the analysis. Plaintiffs' evidence supports the inference that all women workers were subject to discriminatory treatment and a hostile work environment at Eveleth Mines. This inference serves to connect otherwise differently situated persons. Whether or not hourly workers can

tiffs' claims can fairly include claims for discriminatory treatment or sexual harassment by other past or current employees at Eveleth Mines.

### B. *Rule 23(a) Requirements*

#### 1. *Rule 23(a)(1)—Numerosity*

The Court finds that plaintiffs have shown the class to be "so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1).

■ The cases are legion suggesting that there is no absolute number which will satisfy the numerosity requirement. *Paxton v. Union National Bank*, 688 F.2d 552, 559–60 (8th Cir.1982), *cert. denied*, 460 U.S. 1083, 103 S.Ct. 1772, 76 L.Ed.2d 345 (1983); *Boyd v. Ozark Air Lines, Inc.*, 568 F.2d 50, 54 (8th Cir.1977). A court is directed to evaluate the type of action, the size of individual claims, the inconvenience of conducting individual lawsuits, and any other factors pertaining to the propriety of joining all class members. *Paxton*, 688 F.2d at 559.

Plaintiffs asserted that 65 women [24] have been employed at Eveleth Mines since December 13, 1983, and at least 23 women have applied for employment. Defendants, in response, submitted evidence that a number of current female employees are disinclined to join the class. Defendants argued that the remaining number of potential plaintiffs is small enough to make joinder practicable. The Court observes that defendants' position is particularly problematic where—as here—an applicant class will be certified.

■ The Court observes further that differing levels of interest among prospective class members will not, alone, defeat the requirements of Rule 23(a). *Hedge v. Lyng*, 689 F.Supp. 884, 890 (D.Minn.1987).

It is, of course, unlikely that potential class members would be unanimously supportive when most potential class members have an interest in maintaining amicable relationships at work.[25] The Court is mindful that a principal purpose of class actions is "the efficiency and economy of litigation." *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 553, 94 S.Ct. 756, 766, 38 L.Ed.2d 713 (1974). Here, the efficiency and economy of resolving common issues in one lawsuit clearly outweigh any concerns about numbers of plaintiffs. Moreover, because all members of the proposed class will benefit by the relief sought, individual disinterest, alone, is insufficient to defeat class certification.

#### 2. *Rule 23(a)(2)—Commonality*

■ The Court finds that plaintiffs have shown "questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). Individual class members need not be "identically situated" to meet the commonality requirements. *Paxton*, 688 F.2d at 561. Commonality requires the presence of either common questions of law or common questions of fact. Factual differences between individual plaintiffs are to be expected and will not preclude a class action. *Coley v. Clinton*, 635 F.2d 1364, 1378 (8th Cir.1980). The commonality requirement may be met if the common question goes to liability despite individual differences in damages. *Paxton*, 688 F.2d at 561.

According to plaintiffs, the common questions of law and fact are whether individual women were treated differently because of their gender and subjected to a hostile work environment. Plaintiffs concede that individual women may have experienced varied or incidental acts of discrimination at Eveleth Mines. The Court finds,

---

adequately represent salaried workers for Rule 23 purposes is more appropriately addressed by the "adequacy" requirement of Rule 23(a)(4). *See infra*, at 665.

24. Of these 65 women, 33 were salaried and 32 were hourly.

25. Several women testified on behalf of defendants that they had not been subjected to sexual

discrimination at Eveleth Mines. One reported, however, that she had tried to wipe off graffiti from the walls, had torn down sexually explicit pictures, and had locked herself in the elevator to remove offensive graffiti. Another reported being the only woman on her crew. Another reported her desire to remain friends with her male co-workers. Almost all of the women witnesses reported having relatives working at Eveleth Mines.

however, that while the factual patterns experienced by individual women are inevitably distinct, they give rise to a common question of law—whether or not Eveleth Mines discriminated against women.

■ Defendants, again, argue that sexual harassment claims should not be addressed on a class-wide basis. Defendants contend that reactions to profanity, pornography, or other potentially offensive material are highly individualized. The Court does not disagree. The Court finds, however, that the common question of law is not how an individual class member reacted, but whether a reasonable woman would find the work environment hostile. *Ellison v. Brady*, 924 F.2d 872, 879 (9th Cir.1991); *Andrews v. City of Philadelphia*, 895 F.2d 1469 (3rd Cir.1990). As such, plaintiffs' claims meet the commonality requirement.

### 3. *Rule 23(a)(3)—Typicality*

■ The Court finds that plaintiffs have shown their claims to be "typical of the claims ... of the class." Fed.R.Civ.P. 23(a)(3). The typicality requirement is met when the named plaintiffs advance the same legal or remedial theories as those supporting the claims of the unnamed class members. *Paxton*, 688 F.2d at 561–62. Claims may be typical even though varying fact patterns may be used to support them. *Donaldson v. Pillsbury Co.*, 554 F.2d 825, 831 (8th Cir.1977), *cert. denied*, 434 U.S. 856, 98 S.Ct. 177, 54 L.Ed.2d 128 (1977).

■ Plaintiffs allege that employment practices at Eveleth Mines violate Title VII and the Minnesota Human Rights Act.

The proof of many elements of those claims would be identical, taken either individually or as a class.[26] After hearing seven days of evidence, the Court observes that much of the evidence used to prove each individual claim would be relevant to prove the class claims. Because plaintiffs' theory of liability is susceptible to class-wide proof, the Court finds that plaintiffs' claims meet the typicality requirement.

### 4. *Rule 23(a)(4)—Adequacy*

The Court finds that the named plaintiffs can "fairly and adequately" protect the interests of hourly applicants and hourly employees with respect to the terms and conditions of employment and sexual harassment claims. Fed.R.Civ.P. 23(a)(4). The Court finds, however, no evidence that the named plaintiffs can adequately represent salaried applicants or salaried employees.

■ While courts have previously noted the similarity of the adequacy requirement to the implicit requirement that plaintiffs be members of the class, adequacy includes an additional inquiry. Specifically, the Court must be satisfied that the named plaintiffs' interests are not antagonistic to those of class members.[27] *East Texas Motor Freight*, 431 U.S. at 405, 97 S.Ct. at 1897–98. Plaintiffs must share the same interests as those of the putative class. This shared interest insures the vigorous prosecution of the action by the named plaintiffs. *Bishop v. Committee on Professional Ethics, Inc.*, 686 F.2d 1278, 1289 (8th Cir.1982). It appears to this Court that the named plaintiffs have been vigorous advocates of their claims as hourly

---

26. To establish a prima facie case of individual employment discrimination, each plaintiff would have to show that she belongs to a protected class and that she was discriminated against in regard to a term or condition of employment because of her gender. *Craik v. Minnesota State University Bd.*, 731 F.2d 465, 469 (8th Cir.1984). To establish a prima facie case of class-wide employment discrimination, plaintiffs would have to show that defendants engaged in a pattern or practice of unlawful discrimination in various company policies. *Id.* at 470. To establish a prima facie case of sexual harassment under a hostile environment theory, plaintiffs would have to show that 1) they belong to a protected group, 2) they were subject to unwelcome sexual harassment, 3) the harassment was based on gender, 4) the harassment affected a term or condition or privilege of employment, and 5) the employer knew or should have known of the harassment in question and failed to take proper remedial action. *Hall*, 842 F.2d at 1013.

27. Adequate representation under Rule 23(a)(4) also requires that legal counsel be competent. This requirement has not been challenged and the Court is satisfied that plaintiffs' counsel have broad experience and a history of competence in this field.

employees. In this Court's view, however, the named plaintiffs would have no incentive to pursue the claims of salaried applicants or salaried employees.

In particular, no named plaintiff claims to have been deterred from applying for, or rejected for, employment as a salaried worker at Eveleth Mines. No named plaintiff has ever worked in the salaried workforce. The proof necessary to establish discrimination claims is likely to differ significantly between hourly and salaried workers.[28] As such, the Court finds that plaintiffs' request for certification of a class of salaried applicants or salaried employees must fail for want of representative plaintiffs.

### C. *Rule 23(b) Requirements*

The Court finds, for the purpose of this motion, that "the party opposing the class has acted or refused to act on grounds generally applicable to the class." Fed. R.Civ.P. 23(b)(2). Plaintiffs allege that defendants have refused to institute effective sexual harassment policies or affirmative action policies to insure that women are hired and treated equitably in the workplace. These allegations fit squarely into the 23(b)(2) classification. Should plaintiffs' claims be found to have merit, classwide injunctive relief would be appropriate.

### D. *Class Period*

Defendants argue that plaintiffs have incorrectly identified the appropriate time period for the proposed class. Defendants argue that plaintiff Jenson's charge with the Minnesota Department of Human Rights was limited to an individual allegation of sexual harassment. Because the first EEOC charge alleging class-wide dis-

crimination was not filed until April, 1988 (by plaintiff Kosmach), defendants argue that any proposed class is limited to the time period immediately preceding Kosmach's charge.[29]

■ Generally, an employment discrimination action can be certified as a class action only to the extent that the claims were included in the named plaintiff's EEOC charge. *Kloos v. Carter–Day Co.,* 799 F.2d 397, 400 (8th Cir.1986). The Court is mindful, however, that persons filing EEOC charges may lack legal training and, as such, charges must be interpreted liberally.[30] *EEOC v. Michael Construction Co.,* 706 F.2d 244, 248 (8th Cir.1983), *cert. denied,* 464 U.S. 1038, 104 S.Ct. 698, 79 L.Ed.2d 164 (1984). Moreover, a complaint may be as broad as the EEOC investigation which could reasonably be expected to grow out of the charge of discrimination. *Griffin v. Carlin,* 755 F.2d 1516, 1522 (11th Cir.1985). Accordingly, the Court finds that, while the time period for this class may be reconsidered, the class period shall be deemed to commence on December 30, 1983, 300 days prior to plaintiff Jenson's EEOC charge. Of course, under Rule 23(c)(1), the class certification order may be amended at any time before a decision on the merits.

### III. *Analysis—Motion for Preliminary Injunction*

Plaintiffs move the Court for a preliminary injunction directing defendants to adopt, implement, and enforce new procedures for the prevention of sexual harassment. Eveleth Mines established a policy against sexual harassment for its hourly workforce in 1987 by inserting certain terms in the collective bargaining agree-

---

**28.** Pay calculations, benefit plans, and job evaluations are accomplished in distinctly different ways for hourly as opposed to salaried workers. Moreover, union seniority issues and grievance mechanisms are unique to the hourly workforce.

**29.** The parties agree that the cut-off point for defining a class is 300 days before the filing of the earliest charge of an identified class representative. Plaintiffs' Brief, at 9.

**30.** While the "discrimination statement" in plaintiff Jenson's EEOC charge may have described only incidents of sexual harassment, her statement also alleged that she had been discriminated against "in the area of employment on the basis of my sex in violation of Minnesota Statutes 363.03 Subd. 1(2)(c)." This statutory provision includes discrimination "with respect to hiring, tenure, compensation, terms, upgrading, conditions, facilities, or privileges of employment." Minn.Stat. § 363.03 Subd. (1)(2)(c).

ment.[31] A comparable policy for salaried employees was adopted in January, 1988. Plaintiffs argue that the existing procedures are inadequate.

■ In considering a motion for a preliminary injunction, the Court must evaluate the probability of success on the merits, the threat of irreparable harm, the balance between that harm and any injury the temporary relief would inflict on other parties, and the public interest. *Dataphase Systems, Inc. v. C.L. Systems, Inc.*, 640 F.2d 109, 114 (8th Cir.1981). A preliminary injunction is an extraordinary remedy and the burden is on the moving party to demonstrate its necessity. *Id.*

■ Plaintiffs would have this Court impose a revised sexual harassment policy at Eveleth Mines. They urge the immediate imposition of a policy which defines prohibited conduct, provides complaint procedures, and specifies required discipline. The Court does not rule out such a possibility if plaintiffs prevail on the merits. But during the pendency of this suit, the Court has been assured that the conduct of all parties will be carefully monitored. Accordingly, for purposes of this extraordinary remedy, the Court finds that plaintiffs have failed to demonstrate the probability of irreparable harm under the existing policy.[32] The Court is confident that defendants' policy will suffice until the final resolution of this lawsuit.

IV. *Conclusion*

Based on the files, records, and proceedings herein, and for the reasons set forth above, IT IS ORDERED that:

1. Plaintiffs' motion for class certification is granted. The class shall consist of:

all women who have applied for, or have been employed in, hourly positions at Eveleth Mines at any time since December 30, 1983, and who have been, are being, or, as a result of the operation of current practices, will be discriminated against with regard to the terms and conditions of their employment because of gender.

2. Plaintiffs' motion for a preliminary injunction is denied.

3. Plaintiffs' motion for consideration of class issues along with a trial on the merits is granted, to the extent that evidence heard at the present hearing will be considered as having been adduced in support of the case-in-chief.

---

**31.** The collective bargaining agreement now states:

[i]t is also the continuing policy of the Company and the Union that all Employees shall be provided a workplace free of sexual harassment. Sexual harassment shall be considered discrimination under this provision. In the event any such discrimination should occur, and the Company is made aware of same, the Company shall take corrective action as appropriate. Neither the Company nor Union shall retaliate against an Employee who com-

plains of such discrimination, or who is a witness to such discrimination.
Agreement between Oglebay Norton Taconite Company and United Steel Workers of America, July 1, 1987, at 30–31.

**32.** Plaintiffs concede that Eveleth Mines employees are aware of the existing sexual harassment policy. Plaintiffs also concede that defendants have recently made some efforts to rid the workplace of sexually explicit posters, graffiti, and other arguably offensive material.