Marceline M. DONALDSON and others similarly situated, Appellant,

v.

The PILLSBURY COMPANY et al., Appellees.

No. 76–1288.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 24, 1976.

Decided April 14, 1977.

Rehearing and Rehearing En Banc Denied May 9, 1977.

Deborah Greenberg (argued), New York City, Percy L. Julian, Jr., Kenneth P. Casey and Daphne Webb, Julian & Associates, Madison, Wis., Delores C. Orey, St. Paul, Minn., and Jack Greenberg, New York City, on briefs, for appellant.

Thomas P. Kane, and James C. Noonan, St. Paul, Minn. (argued); Robert R. Reinhart, Jr., St. Paul, Minn., on brief, for appellees.

Abner W. Sibal, Gen. Counsel, Joseph T. Eddins, Associate Gen. Counsel, Beatrice Rosenberg, Charles L. Reischel, Lutz Alexander Prager and Susan J. Johnson, Attys., Equal Employment Opportunity Commission, Washington, D. C., on brief, for amicus curiae, U. S. Equal Employment Opportunity Commission.

Before BRIGHT, ROSS and WEBSTER, Circuit Judges.

WEBSTER, Circuit Judge.

Marceline Donaldson, a black woman, appeals from a judgment in favor of the defendants, The Pillsbury Company and certain of its employees, in her employment discrimination action. Appellant contends that the District Court erred both in refusing to certify her suit as a class action, and in ruling on certain discovery and evidentiary matters in the trial of her individual claim.

Appellant was employed by Pillsbury at its Twin Cities headquarters in Minneapolis-St. Paul, Minnesota, from February 1, 1972, to January 31, 1973. She originally held a management position in the Personnel Department. In September, 1972, she was transferred at her request to a position in the International Operations Division. Some time thereafter, her supervisors became dissatisfied with her work in International, and in December or January, 1973, the decision to discharge her was made.

Appellant's amended complaint alleged numerous acts of discrimination against her. She contended that, in her job in Personnel, she was not originally provided a job title or description; that the job provided for her in International was below that for which she was qualified; that various individuals withheld from her the standards, guidance, and training necessary to job performance; that her working place, telephone arrangements, and secretarial arrangements in International were inferior to those provided to others in similar positions; that Pillsbury did not provide educational aid so that she could take Spanish courses; that her attempts to eliminate discrimination against herself and other employees were rebuffed; that she was not furnished with objective evaluations; that she was not paid the same compensation as white males in similar positions; and that she was discharged on the basis of her race and her sex, and her opposition to Pillsbury's discriminatory practices.

In the complaint, appellant sought to represent a class composed of all black and female persons who are or were employed by Pillsbury at its Twin City headquarters, and all black and female persons who have been denied such employment on account of race or sex. Such class would, of course, be circumscribed by the effective dates of the jurisdictional statutes and the applicable statutes of limitations.[1] She alleged that Pillsbury's general employment practices were discriminatory in many respects, particularly that the company maintained separate hiring offices for men and women, engaged in word of mouth recruitment, paid lower wages to females and minority group males, placed such persons into positions below those for which they were qualified, failed to furnish objective evaluations, promoted whites rather than blacks with more seniority, used unreliable testing instruments, excluded women and blacks from company-sponsored educational programs, harassed those who opposed unlawful employment practices, and withheld training and guidance from black and female employees.

After filing the amended complaint, appellant moved to certify the action as a class action under Fed.R.Civ.P. 23. On September 15, 1975, the District Court denied this motion. In doing so, the Court relied principally on the typicality requirement of Rule 23(a)(3). The Court said:

> Plaintiff's claims are unique to herself and not typical or representative of the classes she seeks to represent. She was especially hired outside the normal channels to do a special kind of work. She claims personal mistreatment relating to inadequate training and discharge and personal complaints about having a secretary, individual office or telephone. She also attacks Pillsbury's personnel policies as being discriminatory.

> Plaintiff personally well may have a good cause of action and Pillsbury's personnel policies well may be subject to attack, but this plaintiff is not an appropriate representative for the class because the requisites of Rule 23(a)(3), requiring typicality of claims, is not satisfied. It is also questionable whether the other requisites, numerosity, commonality of issues and adequacy of representation, are met, but it is very clear to me that Marceline Donaldson would not be an appropriate person under the standards set in Rule 23 to represent all Blacks and all women whom she seeks to represent.

---

1. Appellant seeks relief under both Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, and the Civil Rights Act of 1866, 42 U.S.C. § 1981. The District Court, in its order denying class action status, set the threshold date as "since 1965." *See* note 6, *infra.*

Appellant filed a motion to reconsider the denial of class standing. This motion was denied; an appeal from the denial was dismissed by this Court for lack of jurisdiction. *Donaldson v. The Pillsbury Co.*, 529 F.2d 979 (8th Cir. 1976).

Appellant conducted extensive pretrial discovery. Her attorneys undertook a statistical analysis of Pillsbury's employment practices. In response to a first round of interrogatories and motions for production of documents, Pillsbury allowed her attorneys access to many documents, including employment applications and personnel files. Pillsbury also produced computer printouts containing a good deal of information relating to the characteristics of Pillsbury's labor force.

Appellant's attorneys contended that this information was not sufficient for their purposes. They filed a second round of interrogatories, requesting detailed information about the files maintained in Pillsbury's electronic data processing system. The purpose of these interrogatories was to enable the attorneys to file requests for production of magnetic tapes containing the data stored in certain of Pillsbury's computer files, so that appellant's experts could perform their own computer analysis of the data. Pillsbury, in response to the interrogatories, replied that it would be "literally impossible to provide the information requested" because "between 500 and 2,000 different file and report formats exist." Appellant then moved to compel answers to these interrogatories. A U. S. Magistrate, to whom the matter had been referred by the District Court, denied the motion to compel answers, finding that the interrogatories "have been asked in other ways and have been answered." The District Court, on motion to reconsider this order, denied discovery of the computer information.

There followed a lengthy trial. Appellant was her own principal witness. She testified to what she believed were numerous instances of discrimination against her. When she first was assigned to Personnel, she was not given a job description. In Personnel, her principal function became resolving the complaints of female and minority employees. She encountered resistance within the company in her attempts to do so. She received no performance review while in Personnel. On her transfer to International, she was assigned to a secretary's desk rather than the office she had been promised. Her telephone arrangements were unsatisfactory. (These were corrected, after appellant's complaint in October.) She testified that she was unjustly accused of making errors in her work. Much of the work assigned to her was of a clerical nature, or was "makework." When she was assigned markets to handle, the necessary files were in the hands of another employee, so that she was unable to handle them. She testified that her supervisor made sexual advances to her. Finally, appellant was terminated.

As part of her case, appellant made an offer of proof of testimony of fifteen minority employees who contended that they had been victims of discrimination at Pillsbury and who had spoken with appellant about their problems. The District Court at time of trial declined to admit this evidence, finding it irrelevant. Appellant also submitted computer printouts and charts containing statistical information on Pillsbury's hiring processes. The District Court admitted certain of these exhibits into evidence, but excluded others.

Pillsbury produced considerable evidence, including testimony by managerial personnel, contradicting appellant's claims of discrimination. L. D. Compton, an official in the International Division, testified that at no time had there been plans to provide appellant with office, telephone, and secretarial facilities inferior to those provided others at her level. In fact, she was provided with comparable facilities. Compton testified that appellant's performance on several projects was unsatisfactory, that she received numerous personal phone calls, and that she sometimes absented herself from the office without permission. He also testified that one of the assignments characterized by appellant as "makework" was in fact a training exercise, designed to

give appellant knowledge of the problems of exporting consumer products, a knowledge essential to her job performance.

On February 6, 1976, the District Court entered a memorandum and order finding for the defendants on the merits. It found appellant to be "not a credible witness," and found the contested factual issues in favor of the defendants. With respect to the contested evidentiary matters, the Court said:

> During trial the court sustained objections to plaintiff's tender in evidence of many statistical exhibits, including Ex. 1–849, Ex. 1–850, Ex. 1–881 and Ex. 1–882 and offers of proof as to the testimony of many Pillsbury employees as being irrelevant. It still does not appear that such offered evidence is relevant but all of such statistical exhibits are now received, and even considering such exhibits and the offered evidence of the other Pillsbury employees, the court's finding and conclusion remain the same.

This appeal followed.

## I.

In her complaint appellant sought, on the basis of her own claims of racial and sex discrimination, to pursue a broad-based attack on Pillsbury's employment patterns and practices that in her view invidiously discriminated against black and female employees. The District Court took a different view and not only rejected her claim to class status, but also severely limited the scope of discovery and evidence as it applied to the trial of her own claim.

The District Court found that the claims of appellant were not typical of the claims of those in the class she sought to represent. While it described as "questionable" the extent to which appellant had satisfied Rule 23's requirements of numerosity, commonality of issues, and adequacy of representation, it is clear that its ruling stemmed from its conclusion that appellant's claims were "unique to herself and not typical or representative of the classes she seeks to represent." In so holding, we think the District Court misapprehended the scope and application of the typicality requirement and thereby abused its discretion in refusing to certify the case as a class action.

Rule 23(a) establishes these prerequisites to maintenance of a class action:

(1) the class is so numerous that joinder of all members is impracticable,

(2) there are questions of law or fact common to the class,

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and

(4) the representative parties will fairly and adequately protect the interests of the class.

We address ourselves to the third, or "typicality" requirement, since that is the only certain basis upon which the District Court denied class status.

Many courts have noted that the purpose of the typicality requirement overlaps with those of the other subsections of Rule 23(a). A few courts have equated "typicality" with the existence of the common questions required by Rule 23(a)(2). *Rakes v. Coleman*, 318 F.Supp. 181, 190 (E.D.Va.1970); *Minnesota v. United States Steel Corp.*, 44 F.R.D. 559, 566 (D.Minn.1968); *see* 3B J. Moore, Federal Practice ¶ 23.06–2 (2d ed. 1972). *Contra, Vernon J. Rockler and Co. v. Graphic Enterprises, Inc.*, 52 F.R.D. 335, 343 n.14 (D.Minn.1971).

More often, courts have equated typicality with the adequacy of the class representative or the absence of conflict of interest between the representative and class members, the interests protected by Rule 23(a)(4). *See, e. g., Windham v. American Brands, Inc.*, 68 F.R.D. 641, 649 (D.S.C. 1975), *rev'd on other grounds*, 539 F.2d 1016 (4th Cir. 1976); *Kinsey v. Legg, Mason & Co.*, 60 F.R.D. 91, 99 (D.D.C.1973); *Cannon v. Texas Gulf Sulphur Co.*, 47 F.R.D. 60, 63 (S.D.N.Y.1969); *Vernon J. Rockler and Co. v. Graphic Enterprises, Inc., supra.* Because of the existence of these lines of cases, Professor Moore suggests that, "In fact, there is no need for [Rule 23(a)(3)], since all meanings attributable to it duplicate requirements prescribed by other provisions in Rule 23." 3B J. Moore, Federal

Practice ¶ 23.06–2 (2d ed. 1972). *See also* 7 C. Wright & A. Miller, Federal Practice and Procedure § 1764 (1972).

In an effort to give Rule 23(a)(3) an independent meaning, some courts have said that the typicality provision requires a demonstration that there are other members of the class who have the same or similar grievances as the plaintiff. *Taylor v. Safeway Stores, Inc.*, 524 F.2d 263, 268–71 (10th Cir. 1975); *Green v. Cauthen*, 379 F.Supp. 361, 372 (D.S.C.1974); *White v. Gates Rubber Co.*, 53 F.R.D. 412, 415 (D.Colo.1971); *see Green v. Missouri Pacific R.R. Co.*, 62 F.R.D. 434, 436 (E.D.Mo.1973), *rev'd on other grounds*, 523 F.2d 1290, 1299 (8th Cir. 1975). This requirement was adopted as the law of this Circuit in *Wright v. Stone Container Corp.*, 524 F.2d 1058 (8th Cir. 1975). There, a black Title VII plaintiff claimed that his employer improperly excluded him from its maintenance department. This Court upheld the District Court's denial of certification, relying in part on the plaintiff's failure, under Rule 23(a)(3), to "identify any person who had been subjected to the same or similar treatment as he allegedly suffered." 524 F.2d at 1062.

Appellant's complaint alleges that Pillsbury has engaged in employment practices which have had the effect of limiting job opportunities of women and blacks. Statistical evidence was offered to show that Pillsbury has consistently employed a low number of women and blacks in its Twin

Cities headquarters since 1965, and that of those minority groups actually employed, there has been a significantly high turnover.[2] Among the discriminatory patterns alleged to have contributed to this condition are the following:

(a) disparity in employment at upper levels, particularly professional and management jobs,

(b) disparity in pay between white males and females and blacks for equivalent work,

(c) separate hiring offices (until January, 1973) for men and women with job limitations on women not applicable to men,

(d) the denial to blacks and females of jobs with meaningful content or regular defined duties,

(e) the denial to blacks and females of opportunities for advancement into higher level positions comparable to similar opportunities available to white males,

(f) evaluations by biased supervisors,

(g) unequal working conditions for comparable jobs,

(h) unequal monitoring of infractions of company rules and regulations, and

(i) retaliation against employees who protested against discriminatory practices.

To support these allegations of pervasive discriminatory conduct, appellant produced affidavits by employees of Pillsbury who claimed to have been the victims of race or sex bias in one or more of the forms listed.[3] Appellant's allegations of

---

2. From 1966 through 1972 (the last year for which this data is included in the present record), black employees did not exceed 2.5% of Pillsbury's headquarters work force. The largest number of blacks in any one year was thirty-four (out of 1,367 employees) in 1971. There were at most three blacks among 302 officers and managers (1% of workers in this category), and thirteen blacks among 410 professionals (3.1% of this category).

The total number of women employees was more representative, exceeding 40% each year, with the largest number 823. However, there were at most eleven female officers and managers (3.6% of this category) and seventy-six female professionals (18.5% of this category). Female workers were disproportionately grouped in the "office and clerical" category.

Appellant alleged in her complaint that, although the number of minority employees had increased from thirteen in 1966 to forty in 1972, none of the original thirteen still worked for Pillsbury. Sixteen blacks terminated employment in 1972; twenty-two terminated in 1973. One hundred sixty-eight women terminated in 1972; 167 in 1973.

3. Appellant produced six affidavits: four of black females, one of a black male, and one of a white female. Five of the affiants had been employed at Pillsbury. All made numerous claims of discrimination. One affiant complained of the unavailability of a professional or managerial job, two of inequality in pay, two of the denial of jobs of meaningful content or well-defined duties, three of the denial of advancement opportunities, four of bias on the

employment discrimination, while factually differing in detail from those of other employees as reflected in their affidavits, are plainly rooted in the same bias asserted as the source of the discrimination. Appellant may properly challenge such practices.

 In *Wright v. Stone Container Corp., supra,* 524 F.2d at 1061–62, we said:

We are committed to the proposition that Rule 23 should be liberally construed to effectuate the remedial policy of Title VII since the conduct therein proscribed is discrimination against a class characteristic.

The District Court stressed the unique aspects of appellant's employment—that "[s]he was specially hired outside the normal channels to do a special kind of work." While this finding is questionable, if not clearly erroneous,[4] it is not enough to make appellant's claims atypical. *See Long v. Sapp,* 502 F.2d 34, 43 (5th Cir. 1974) (plaintiff could represent class challenging county hiring practices even though she herself has been hired). She has charged discrimination based on patterns and practices not special or unique to herself and has made a

showing that a significant number of other members of the class have been similarly victimized by the same patterns and practices. When the claim arises out of the same legal or remedial theory, the presence of factual variations is normally not sufficient to preclude class action treatment. *Gibson v. Local 40, Longshoremen's Union,* 543 F.2d 1259, 1264 (9th Cir. 1976); *Senter v. General Motors Corp.,* 532 F.2d 511, 523–24 (6th Cir. 1976); *Russell v. American Tobacco Co.,* 528 F.2d 357, 365 (4th Cir. 1975), *cert. denied,* 425 U.S. 935, 96 S.Ct. 1666, 48 L.Ed.2d 176 (1976); *Rich v. Martin Marietta Corp.,* 522 F.2d 333, 340 (10th Cir. 1975); *Long v. Sapp, supra,* 502 F.2d at 43.

 By demonstrating that there were in fact other members of the class who had similar grievances, *Wright v. Stone Container Corp., supra,* appellant has met the quantitative aspect of the typicality requirement. Our analysis of appellant's individual claims likewise convinces us that her personal interest in establishing the various claims of discrimination is sufficiently parallel to the interests of the other class members to assure a vigorous representation of the class.[5] She has laid a prop-

---

part of supervisors, one of inequality in working conditions, and one of retaliation for protesting discrimination. One of the affiants, a black woman, had never been hired by Pillsbury. She applied for a managerial or professional position in January, 1973, and asserts she was told that Pillsbury did not employ women in such positions.

In addition to the affidavits, appellant, in her own *deposition, identified eighteen other individuals* who claimed to be victims of discriminatory policies.

These affidavits were presented in support of the motion to reconsider the denial of class certification, rather than in support of the initial motion for certification. It is not clear why they were not presented in support of the original motion. The affidavits were filed, however, a short time after the order denying certification, when no prejudice to Pillsbury would have resulted from reconsidering the question. Reconsideration was permissible at any time. Fed.R.Civ.P. 23(c). In determining whether the District Court at any time abused its discretion in refusing to allow certification, we consider the affidavits as going to the question of typicality.

4. Appellant did come to Pillsbury in an unusual fashion, in that her first contact was with Dean

McNeal, a company vice-president, whom she met through the Minneapolis Urban Coalition. McNeal directed her to Henry Brown, of the Personnel Department, and she went through what is apparently the standard interviewing procedure.

Her duties, first in the Personnel Department and then in the International Division, were not a "special kind of work"; they appear to be activities regularly carried on by many Pillsbury employees. Appellant's position was "special" only in that she entered the company at a level higher than that of most Pillsbury employees of her race and sex.

5. The class obviously is one in which the numerosity requirement has been met. *See* Rule 23(a)(1). The allegations of class-based discrimination in hiring and employment practices likewise satisfy the Rule 23(a)(2) requirement of commonality. Finally, it is clear from this record that appellant can fairly and adequately protect the interests of the class. *See* Rule 23(a)(4). In fact, she is uniquely qualified by reason of her extensive experience dealing with minority problems within Pillsbury, and her chosen counsel has demonstrated full competence to press her claims in court.

Appellant's failure to prevail on her own claim, while ordinarily an element to consider

er foundation to pursue a full-scale inquiry into Pillsbury's alleged unlawful practices. *See Reed v. Arlington Hotel Co.*, 476 F.2d 721, 723 (8th Cir.), *cert. denied*, 414 U.S. 854, 94 S.Ct. 153, 38 L.Ed.2d 103 (1973); *Parham v. Southwestern Bell Telephone Co.*, 433 F.2d 421, 425 (8th Cir. 1970). We therefore conclude that the District Court abused its discretion in denying class status.[6]

## II.

Appellant claims that she was erroneously denied needed statistical evidence by the orders of the District Court relating to discovery. In order to present her pattern and practices claim, she sought to obtain a computer readout or tape which would disclose the employees at Pillsbury headquarters during the applicable period by name, race, sex, job and pay. Appellee contends that this information had already been furnished to appellant in the form of a massive production of records from which the desired information could be synthesized. We have been given sharply conflicting statements of the cost and feasibility of producing this information from Pillsbury's computer bank.[7]

▮ The information relating to past salaries was undeniably relevant, even in an individual case, for an employer's past history is relevant in such a case both to show

disparate treatment and to establish a claim of pretextuality. *King v. Yellow Freight System, Inc.*, 523 F.2d 879 (8th Cir. 1975); *Burns v. Thiokol Chemical Corp.*, 483 F.2d 300, 305 (5th Cir. 1973). *See also Parham v. Southwestern Bell Telephone Co., supra.* Data in computer-readable form is more easily subjected to analysis, and two district courts have upheld motions for production of such documents, in the face of claims that similar information had been provided in readout form. *Adams v. Dan River Mills, Inc.*, 54 F.R.D. 220, 222 (W.D.Va.1972) (employment discrimination case); *United States v. Davey*, 404 F.Supp. 1283 (S.D.N.Y. 1975) (tax case).

Because we conclude that the District Court erred in excluding the statistical evidence which was produced, as well as certain other evidence (*see* Part III, *infra*), we need not decide whether the Court abused its discretion in refusing discovery of material in Pillsbury's data base in computer-readable form. On remand, the District Court may, of course, reconsider the question, particularly in light of our determination that the suit should proceed as a class action.

## III.

Despite the limitations on discovery, appellant was able to produce at trial a number of statistical exhibits relating to Pills-

---

in the appellate review of a class action determination, see *Wright v. Stone Container Corp., supra*, 524 F.2d at 1062, is not conclusive. It does not defeat her capacity to represent the class. *See Parham v. Southwestern Bell Telephone Co.*, 433 F.2d 421, 428 (8th Cir. 1970); *Roberts v. Union Co.*, 487 F.2d 387, 389 (6th Cir. 1973); *Martin v. Thompson Tractor Co.*, 486 F.2d 510, 512 (5th Cir. 1973); *Moss v. Lane Co., Inc.*, 471 F.2d 853, 855 (4th Cir. 1973); *Brown v. Gatson County Dyeing Machine Co.*, 457 F.2d 1377, 1380 (4th Cir.), *cert. denied*, 409 U.S. 982, 93 S.Ct. 319, 34 L.Ed.2d 246 (1972). In this case, where the representative's failure on the merits might have resulted from the District Court's improper limitation of the scope of her proof (*see* Part III, *infra*), we accord this element little weight.

6. We have accorded the District Court a degree of discretion to limit a class where only a specific employment practice applicable to a limited number of employees is challenged.

*Green v. Missouri Pacific R.R. Co.*, 523 F.2d 1290, 1299 (8th Cir. 1975). The allegations here appear to be as broad as the class claimed. The District Court retains the power to designate sub-classes or decertify the class upon a proper showing as the case progresses.

7. Appellant's expert stated by affidavit that the actual process of duplicating computer tapes involved a minimum of expense (the greatest part of which is fifteen dollars for the tape itself). He asserted that in a case involving a large number of employees use of data in computer-readable form is the most economical method of preparing statistical data for court use. Appellees contended, in responding to interrogatories seeking information in computer-readable form, that even certain preliminary information deemed necessary by appellant could not be produced because "[b]etween 500 and 2,000 different file and report formats exist."

bury's past employment practices. The District Court excluded certain of the statistical exhibits, and all testimony of the other employees. Appellant made offers of proof of the excluded testimony. At the conclusion of its opinion on the merits, the District Court said of this evidence, "It still does not appear that such offered evidence is relevant but all of such statistical exhibits are now received, and even considering such exhibits and the offered evidence of the other Pillsbury employees, the court's finding and conclusion remain the same." Appellant contends that the District Court improperly excluded this relevant evidence.

In defending the District Court's ruling rejecting appellant's personal claims, Pillsbury contends that, assuming a prima facie case of discrimination could have been made by the excluded evidence, Pillsbury nonetheless had met its burden to supply bona fide reasons (other than discrimination) for appellant's discharge. It relies on the District Court's finding that the true reason for appellant's discharge lay in her performance: her habitual tardiness, unsatisfactory and superficial performance of work assignments, and the insubordinate and uncooperative work attitude in the International Division. The Court found that appellant saw "bogeymen" of discrimination where there were none.[8]

Pillsbury concedes that the use of statistical evidence and evidence of pattern discrimination may be useful to support an individual claim of race or sex discrimination. *Marquez v. Omaha District Sales Office, Ford Div. of Ford Motor Co.*, 440 F.2d 1157 (8th Cir. 1971); see *King v. Yellow Freight System, Inc.*, 523 F.2d 879, 882 (8th Cir. 1975). It argues, however, that proof of a satisfactory nondiscriminatory reason for discharge will overcome the effect of such statistical or pattern evidence. See *King v. Yellow Freight System, Inc., supra; Naraine v. Western Electric Co.*, 507 F.2d 590, 594 (8th Cir. 1974).

The difficulty with this argument is that the District Court, by excluding substantial relevant evidence of discriminatory patterns and practices by Pillsbury,[9] may well have so circumscribed the evidence that it robbed appellant's case of the setting necessary to give credibility to her personal claims of discrimination. It is not surprising under these circumstances that the District Court concluded that appellant saw bogeymen where there were none. While we are not prepared to say that the District Court's findings of fact are clearly erroneous on the record before it, we do hold that the District Court erred in excluding relevant evidence which might well have affected its findings. We do not think that the District Court's post-trial nunc pro tunc admission of the excluded evidence and offers of proof, and its summary rejection thereof, can operate to cure the prejudice to appellant in the presentation of her case.

We deem it appropriate to vacate the judgment dismissing appellant's personal claims of discrimination in order that she might have the benefit of the additional evidence of patterns and practices which will be available to the entire class. This has the concomitant benefit of reinforcing the right of the class to fair and adequate representation by preserving appellant's personal stake in the outcome of the case. Since the case is to be tried to the Court, it

---

8. The District Court concluded:

I am satisfied from all of the evidence that plaintiff was not discriminated against in any respect. On the contrary, it shows that in many respects she was afforded preferential treatment. Most of plaintiff's proof came only from plaintiff herself. She was not a credible witness. The conclusion is fully justified from the evidence that plaintiff saw bogeymen where there were none and unjustifiably attached improper motives and racial and sex overtones to many events and relationships during the year of her employ-

ment with Pillsbury. Plaintiff had the enviable opportunity to learn much and advance rapidly with her employer but her work just didn't pass muster and this, with her negative attitude and contentious disposition, fully justified her discharge.

9. It is apparent that the District Court's rulings stem from a legitimate desire not to overburden the record and from the conclusion, here held to be erroneous, that appellant's claims were unique and both unlike and unrelated to the claims of other Pillsbury employees.

will not be necessary to resubmit evidence which was admitted at time of trial. New evidence can be adduced in the form of a supplemented record. *See Rich v. Martin Marietta Corp., supra,* 522 F.2d at 347.

Reversed and remanded for further proceedings consistent with this opinion.

ROSS, Circuit Judge, concurring in part and dissenting in part.

I agree with the majority that the trial court should have permitted this action to proceed as a class action. I do not agree, however, with the determination that the trial court erred in dismissing appellant's individual claim. The specific findings as to credibility and as to the facts concerning the appellant's personal case are set forth at length in Judge Devitt's opinion, *Donaldson v. Pillsbury Co.,* 406 F.Supp. 1210 (D.Minn.1976), and, in my opinion, are not clearly erroneous.

The majority suggests that appellant's claim be reconsidered in light of "relevant evidence of discriminatory patterns and practices by Pillsbury." But unless the trial court erred in some or all of its specific detailed findings of fact, the general statistical evidence will not change the fact that Pillsbury proved that it was fully justified in discharging the appellant for nondiscriminatory reasons. I do not agree that the fact that some evidence was admitted nunc pro tunc subsequent to trial is any indication that the trial court failed to give it full consideration as it related to appellant's individual case.

I have serious reservations concerning the ability of the plaintiff to properly represent the class she seeks to represent in view of the fact that her own case was so completely without merit. However, I do agree that the failure of the class representative to prevail on her own claim does not necessarily disqualify her from representing the class.