**Olivia COPE, on behalf of herself and all other similarly situated persons, known and unknown, Plaintiff,**

v.

**LET'S EAT OUT, INCORPORATED, et al., Defendants.**

**Case No. 6:16–cv–03050–SRB**

United States District Court, W.D. Missouri, Southern Division.

Signed 05/10/2017

Douglas M. Werman, Steven Paul Schneck, Zachary C. Flowerree, Chicago, IL, Rowdy B. Meeks, Rowdy Meeks Legal Group LLC, Prairie Village, KS, for Plaintiff.

Daniel L. Messeloff, Jackson Lewis PC, Cleveland, OH, Kyle B. Russell, Jackson Lewis PC, Overland Park, KS, Paul De-Camp, Jackson Lewis P.C., Reston, VA, for Defendants.

## ORDER

STEPHEN R. BOUGH, UNITED STATES DISTRICT JUDGE

Before the Court is Plaintiff Olivia Cope's Motion for Class Certification (Doc. # 143).

For the reasons stated below, the motion is granted.

## I. Background

This Motion for Class Certification, filed pursuant to Federal Rule of Civil Procedure 23, arises from a franchise-wide "Guest Payment Policy" purportedly promulgated by Defendant Bruno Management Company, Inc. ("Defendant Bruno") at four Buffalo Wild Wings restaurants in Missouri. As memorialized, the policy required servers and bartenders at Defendants' Buffalo Wild Wings restaurant locations to reimburse the restaurant for losses resulting from guests who leave the premises without making payment for their bill. However, the manner in and extent to which this policy was enforced—including when the policy was implemented, whether servers and bartenders at different locations were required to pay, whether this policy extended to cash shortages, and the percentage of a bill that employees actually paid—are vigorously disputed.

### A. History of Proceedings

On February 10, 2016, Plaintiff Olivia Cope ("Plaintiff Cope") filed the instant action against Defendants Let's Eat Out, Inc., d/b/a/ Buffalo Wild Wings, later amended to include Defendant Bruno and other co-defendants (collectively, the "Defendants"), for (1) violations of the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*; (2) failure to pay minimum wages to Plaintiff Cope and the putative class pursuant to the Missouri Minimum Wage Law ("MMWL"), Missouri Revised Statutes § 290.500, *et seq.*; and (3) claims for unjust enrichment and *quantum meruit* under Missouri common law for Defendants' alleged failure to pay Plaintiff and other tipped employees all earned minimum wages.

Plaintiff Cope was employed at a Buffalo Wild Wings restaurant in Springfield, Missouri, between approximately March 2013 and January 2016. For approximately the first six to seven months of her employment, Plaintiff Cope worked as a cashier, and then as a server. For the last five to six months of her employment, Plaintiff Cope also worked as a bartender. The Complaint alleges that Defendants violated the FLSA by: (1) paying tipped employees sub-minimum, tip-credit rates of pay, while failing to inform them of the tip-credit provisions of the FLSA; (2) requiring them to perform improper types and excessive amounts of non-tipped work; and (3) requiring them to reimburse the restaurants from their tips when customer walkouts or cash register shortages occurred. Furthermore, the Complaint alleges that Defendants violated Missouri state minimum wage laws and Missouri common law by enforcing the "Guest Payment Policy," which— at least, according to the terms of the policy—required employees to reimburse the restaurants for tips for losses resulting from customer walkouts or cash register shortages.

On April 1, 2016, Plaintiff Cope filed a motion for conditional certification of a class of "all current and tipped employees of Defendants' Buffalo Wild Wings restaurants who were paid sub-minimum wages in the last three years" for her FLSA claim pursuant to 29 U.S.C. § 216(b), which authorizes certification of collective actions for violations of the FLSA. (Doc. # 36, p. 21). The motion requested that the Court approve the mailing and electronic publishing of notice and a reminder notice to consent to join the action by the stated deadline, and to require that Defendants Let's Eat Out, Inc. and Jeremy Boyer provide Plaintiff Cope with a list of names and contact information for tipped employees who had worked at Defendants' multiple restaurant locations in Arkansas, Alabama, Florida, Missouri, Nebraska, and Oklahoma for the past three years. After being advised that the initially-named Defendants had no authority to produce the names and contact information of potential members of the FLSA collective action claim (the "FLSA Class") outside of Defendants' Springfield, Missouri and Huntsville, Alabama locations, Plaintiff Cope added Defendant Bruno to the action and subsequent filed a motion to enlarge the Step–One Notice to employees of the remaining Buffalo Wild Wings restaurants operated by Defendant Bruno. (Doc. # 67).

Unlike the present Rule 23 motion, Plaintiff Cope's Section 216(b) motion involved an analysis of whether Plaintiff had established a "colorable basis" that class members were required to perform extensive amounts of non-tipped work, including closing duties, intensive cleaning duties, and other "side" work[1] during their shifts in violation of the FLSA, to warrant conditional certification for notice purposes and enable plaintiffs to opt-in to the FLSA claim. Hewing to the more lenient evaluation standards governing FLSA certification, the Court granted the Section 216(b) motion for conditional certification and issuance/enlargement of notice.

### B. The Instant Motion

The Court has been asked to certify the following two classes under Plaintiff's Missouri state law claims for employees who worked at Defendants' four locations in Missouri—the "MMWL Class" and "Missouri Common Law Class"—pursuant to the considerably more stringent requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(3):

1. All current and former servers and bartenders working at any of Defendants' Buffalo Wild Wings restaurants in Missouri who, at any time from February 10, 2014 until May 31, 2015, were paid sub-minimum, tip-credit rates of pay.

2. All current and former servers and bartenders working at any of Defendants' Buffalo Wild Wings restaurants who, at any time from February 10, 2011 until May 31, 2015, were paid sub-minimum, tip-credit rates of pay.

In connection with the requested class certification, Plaintiff Cope asks the Court to: (1) appoint Plaintiff Cope as Class Representative; (2) designate Plaintiff's counsel of record as Class Counsel; (3) order Defendants to provide a third-party notice administrator a "Class List" containing the names and information of prospective class members; and (4) approve the proposed class action notice.

---

1. "Side" work is work where the employee does not have an opportunity to interact with custom-

### II. Legal Standard

 Class certification is governed by Federal Rule of Civil Procedure 23. Rule 23 requires that an action satisfy all four prerequisites of Rule 23(a) and at least one of the provisions of Rule 23(b). *Comcast Corp. v. Behrend*, 569 U.S. 27, 133 S.Ct. 1426, 1432, 185 L.Ed.2d 515 (2013). Pursuant to Rule 23(a), the party seeking certification must demonstrate that the proposed class satisfies the requirements of numerosity, commonality, typicality, and adequate representation, to ensure that any class claims are limited "to those fairly encompassed by the named plaintiff's claims." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982) (internal quotations and citations omitted). Rule 23(b)(3), pursuant to which Plaintiff seeks certification, requires that the Court find that "questions of law or fact common to class members predominate over any questions affecting only individual members," and that a class action is the "superior" method of adjudication of the controversy.

Before analyzing whether the requirements set forth in Rule 23 have been met, the Court will address the parties' arguments relating to what have sometimes been referred to as the "implicit requirements" of the courts' Rule 23 analysis: standing and ascertainability. *See, e.g., Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*, 821 F.3d 992, 995 (8th Cir. 2016); *In re Teflon Prod. Liab. Litig.*, 254 F.R.D. 354, 360 (S.D. Iowa 2008). With respect to the issue of standing, the Eighth Circuit has held that the "irreducible constitutional minimum of standing [that] requires a showing of injury in fact to the plaintiff that is fairly traceable to the challenged action of the defendant, and likely to be redressed by a favorable decision" applies to class actions. *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1034 (8th Cir. 2010). With respect to ascertainability, this Circuit has not "outlined a requirement of ascertainability," or treated it as a "separate, preliminary requirement." *Sandusky*, 821 F.3d at 995–

ers for the purpose of earning tips.

996. Rather, in noting that that "[m]ost of the other circuit courts of appeals have recognized that Rule 23 contains an implicit threshold requirement that the members of a proposed class be readily identifiable... an ascertainability requirement," the Eighth Circuit has determined that the certifying court must find that the class sought to be represented "must be adequately defined and clearly ascertainable" in connection with a court's Rule 23 analysis. *Id.* (internal quotation marks omitted) (collecting cases). Thus, the Court will address whether the proposed classes meet this standard of ascertainability and standing in connection with its Rule 23 analysis below.

"Rule 23 does not set forth a mere pleading standard." *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011). Instead, a plaintiff "must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Id.* (emphasis in original). The preponderance of the evidence standard applies to evidence proffered to establish the requirements of Rule 23. *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 202 (2d Cir. 2008). A district court must undertake a "rigorous analysis" to ensure that the requirements of Rule 23 are met. *Bennett v. Nucor Corp.*, 656 F.3d 802, 814 (8th Cir. 2011). Although the court's analysis will frequently entail some overlap with the merits of the underlying claims, "[this] cannot be helped." *Wal–Mart*, 564 U.S. at 351, 131 S.Ct. 2541.

However, there are limits to a court's analysis of the merits of a matter at the class certification stage. A court's inquiry on a motion for class certification is "tentative," "preliminary," and "limited." *In re*

*Zurn Pex Plumbing Prod. Liab. Litig.*, 644 F.3d 604, 613 (8th Cir. 2011). "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 568 U.S. 455, 133 S.Ct. 1184, 1195, 185 L.Ed.2d 308 (2013). With these standards in mind, the Court will analyze the motion for class certification in accordance with the requirements of Rule 23.

## III. Discussion

### A. Rule 23(a) Requirements

Rule 23(a) contains four requirements applicable to all proposed classes: (1) the class is so numerous that joinder of all members is impracticable (numerosity); (2) there are questions of law or fact common to the class (commonality); (3) the claims or defenses of the representative party are typical of the claims or defenses of the class (typicality); and (4) the representative party will fairly and adequately protect the interests of the absent class members (adequacy). Fed. R. Civ. P. 23(a). In connection with its Rule 23 analysis, the Court will first address whether Plaintiff has met the requirements of ascertainability and standing.

### 1. Ascertainability of Proposed Classes [2]

The Eighth Circuit has held that a proposed class "must be adequately defined and clearly ascertainable." *Sandusky, supra*, 821 F.3d at 996 (discussing the heightened standard of ascertainability applied to class definitions by the Third Circuit, and the Seventh Circuit's rejection of the same). The Court's ascertainability inquiry is intertwined

**2.** The parties' primary dispute concerns the extent to which the Guest Payment Policy was actually enforced in Defendants' Missouri restaurants. From this factual dispute flows the closely related questions of whether the proposed classes are fatally overbroad, whether the classes are clearly ascertainable, whether the named plaintiff and putative class members have standing, and other issues that have been alternately framed by the parties as issues of ascertainablity, standing, class manageability and judicial econo-

my. Such factors are not expressly stated in Rule 23(a), and different courts have accorded varying degrees of weight to such factors in evaluating class certification. O'Connell et al., *Federal Civil Procedure Before Trial*, §§ 10:250–10:922 (Nat. Ed. 2017). Recognizing that the factual issues relating to Defendants' enforcement of the Guest Payment Policy will inform all points of the Court's Rule 23 analysis, the Court will first address these issues in the context of ascertainability and standing.

with its analysis of standing, which requires a plaintiff to "establis[h] [an] injury in fact . . . that is fairly traceable to the challenged action of the defendant, and likely [to] be redressed by a favorable decision." *Zurn*, 644 F.3d at 616 (quoting *Braden v. Wal–Mart Stores, Inc.*, 588 F.3d 585, 591 (8th Cir. 2009)) (internal quotation marks omitted).

■ Defendants aver that the Guest Payment Policy was enforced on a manager-by-manager basis, that not all servers or bartenders employed at the applicable time periods were actually required to reimburse their restaurants for a guest walkout, and that the percentage and amount of the reimbursements required varied significantly. (*See generally*, Doc. # 147). Defendants also dispute the existence of a policy or practice requiring servers or bartenders to reimburse their restaurants for cash shortages. *Id.* at p. 1. Moreover, Defendants claim that Let's Eat Out, Inc. and Bruno Enterprises, Inc. revised the policy in approximately late 2013, and that employees were only subject to disciplinary actions thereafter. *Id.* at pp. 1–3. On these grounds, Defendants argue that Plaintiff has failed to demonstrate that all potential class members have suffered the same injury, thereby failing to establish the standing and implicitly, the ascertainability of the proposed classes.

Defendants do not dispute, however, that servers and bartenders working at the four Missouri restaurant locations were subject to a franchise-wide policy from "prior to 2012" or at least "[f]rom early 2012" to approximately late 2013, which required them to reimburse their restaurant for guest walkouts. (Doc. # 167–1, pp. 5, 7; Doc. # 147–1, ¶ 4; Doc. # 159, p.1). Plaintiff Cope has established the existence of the policy by a preponderance of the evidence, producing written copies of Guest Payment Policies signed by employees as late as August 27, 2015, as well as affidavits from servers, bartenders, and restaurant managers attesting to the enforcement of the same. (Doc. ## 144–2 and 144–3, Exhibits B–V, X (declarations from employees and managers regarding non-tipped work, customer walkouts, and cash drawer shortages); Doc. # 144–4, Exhibit Y (copy of Wild Wings Franchise Wide Store Policies, including subject policy); Doc. # 153–2, Exhibit 1 (copies of Guest Payment Policies signed between January 8, 2014 and August 27, 2015)). The evidence submitted so far indicates that the policy may have been in effect for longer than Defendants have acknowledged. (Doc. # 153–2, pp. 1–56, Group Exhibit 1 (consisting of 51 original Guest Payment Policies signed by FLSA Class plaintiffs after 2013)).

The Guest Payment Policy is a single policy that purportedly violates Missouri law and similarly situates Plaintiff Cope and the putative plaintiffs. *See Bouaphakeo v. Tyson Foods, Inc.*, 765 F.3d 791, 796 (8th Cir. 2014), *aff'd* —— U.S. ——, 136 S.Ct. 1036, 194 L.Ed.2d 124 (2016) (single time coding policy governing meat-processing employees "similarly situate[s]" plaintiff and other class members). Using the "objective criteria" of where an employee worked, the period of employment, and type of position held, Plaintiff may clearly ascertain employees who were subject to the Guest Payment Policy during the applicable time periods in Defendants' Missouri restaurant locations, and thus readily identify potential class members from Defendants' payroll records. *Sandusky*, 821 F.3d at 995 (discussing the heightened requirements of ascertainability adopted by the Third Circuit in *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015)). Based on the foregoing, the proposed classes have been adequately defined and are clearly ascertainable.

## 2. Standing of Proposed Classes

■ The fact that some class members may not have been required to reimburse a restaurant will not defeat a finding of standing. *Tyson Foods, Inc. v. Bouaphakeo*, —— U.S. ——, 136 S.Ct. 1036, 1050, 194 L.Ed.2d 124 (2016) (declining to decide whether uninjured class members may recover, but concluding that the fact some class members suffered no injury will not defeat class certification); *Bouaphakeo v. Tyson Foods, Inc.*, 593 Fed.Appx. 578, 585 (8th Cir. 2014) ("federal courts do not require that each member of a class submit evidence of personal standing," so long as each member may allege injury) (quoting *Halvorson v. Auto–Owners Ins. Co.*, 718 F.3d 773, 779 (8th

Cir. 2013)); *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 757–58 (7th Cir. 2014) (class definition is too broad if it includes those "who could not have been harmed," but is acceptable if it includes those "who were not harmed[.]"). The Court is mindful that, at the class certification stage, the parties are engaging in ongoing discovery regarding their underlying claims and defenses of the case, and the proposed class members have not been conclusively identified. As the Seventh Circuit has observed:

> [A] class will often include persons who have not been injured by the defendant's conduct; indeed this is almost inevitable because at the outset of the case many of the members of the class may be unknown, or if they are known still the facts bearing on their claims may be unknown. Such a possibility or indeed inevitability *does not preclude class certification.*

*Kohen v. Pac. Inv. Mgmt. Co. LLC*, 571 F.3d 672, 677 (7th Cir. 2009). Here, the fact that not all tipped employees were required to reimburse their restaurant after a guest walkout will not prevent a finding of standing and certification. "Fortuitous non-injury" to subset of class members will not necessarily defeat certification of an entire class, since a common policy or practice would expose the class as a whole to damages. *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1137 (9th Cir. 2016). Certification of the proposed classes will not rule out the possibility of winnowing out of non-injured members at the damages phase of the litigation, the later refining of a class definition, and the use of discovery to eliminate class members who did not suffer an injury in fact. *Id.* At this stage of the litigation, by alleging that class members were subject to sub-minimum, tip-credit rates of pay as a result of the Guest Payment Policy, Plaintiff has sufficiently established an injury that that is fairly traceable to a common, purportedly unlawful policy

and conduct of Defendants that will likely be redressed by a favorable decision by this Court. *Zurn, supra*, 644 F.3d at 616.

Additionally, the Court need not find that all class members suffered the same injury as Plaintiff Cope. *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992) (it is not necessary that all class members suffer the same injury as the named plaintiff); *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1198 (10th Cir. 2010) (Rule 23's requirements "neither require all class members to suffer harm or threat of immediate harm"); *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 625 (5th Cir. 1999) (variations in harm immaterial because class members' legal and remedial theories were identical). Thus, Defendants' arguments regarding the variance in percentage and amounts of employee payments for customer walkouts are irrelevant to the Court's analysis of certification. Moreover, individual inquiries into the amount that employees were required to pay to reimburse their restaurants will not bar certification of the proposed classes. *In re Nexium Antitrust Litig.*, 777 F.3d 9, 21 (1st Cir. 2015) (need "for some individualized determinations at the liability and damages stage does not defeat class certification"); *Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150, 1155 (9th Cir. 2016) ("[T]he need for individual damages calculations does not, alone, defeat class certification[.]").

The Court recognizes that the parties have provided conflicting evidence as to each restaurant's enforcement and date of termination of the Guest Payment Policy. (*E.g.* Doc. # 147–1, ¶¶ 4, 6, 7 ("in around late 2013, this policy was changed"); *contra* Doc. # 153–2, (copies of written policies signed after 2013)). This is symptomatic, however, of Defendants' failure to maintain records of employee reimbursements for customer walkouts.[3] The Court will not deny relief

---

**3.** At the May 2, 2017 hearing on this motion, Defendants acknowledged that they did not keep records of employee reimbursement for walkouts. Additionally, without according much substantive weight to the self-authenticating Department of Labor ("DOL") report attached to Plaintiff's motion to submit supplemental evidence, which the Court orally granted in the absence of Defendant's objection at the May 2,

2017, hearing on this motion, the Court also notes that the DOL previously found that Defendants did not maintain" records of the payments made by the employees as they are made in cash," and that "[i]n order to pay for the mistakes/ walk outs[sic]/shortages, the employee would have to record it in the register as cash payment which is not any different as if a cus-

based on the absence or inadequacy of records of the extent/amount of each class member's damages. Where an "employer's records are inaccurate or inadequate," the solution is "not to penalize the employee by denying him any recovery...[which] would place a premium on an employer's failure to keep proper records in conformity with his statutory duty," but to allow the employee to provide "sufficient evidence to show amount of work for which [the] employee was not properly compensated as a matter of just and reasonable inference." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946), *superseded by statute on other grounds*. By providing declarations from a number of servers and bartenders who were required to reimburse the restaurant for guest walkouts and cash shortages, Plaintiff Cope has provided copies of the Guest Payment Policy and other evidence from which a just and reasonable inference that she and other class members were improperly compensated can be drawn. *Id.* at 687–688, 66 S.Ct. 1187. In view of the foregoing, Plaintiff Cope has properly established standing as the named plaintiff to sue on the claims that are the basis of this action.

### i. Numerosity

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." In determining whether or not the numerosity requirement is satisfied, "the nature of the action, the size of the individual claims, the inconvenience of trying individual suits, and any other factor relevant to the practicability of joinder is relevant." *Emanuel v. Marsh*, 828 F.2d 438, 444 (8th Cir. 1987), *cert. granted and judgment vacated on other grounds*, 487 U.S. 1229, 108 S.Ct. 2891, 101 L.Ed.2d 925 (1988) (citing *Paxton v. Union Nat. Bank*, 688 F.2d 552, 559–560 (8th Cir. 1982)). Here, 540 current and former servers and bartenders have consented to join the FLSA collective action claim. (Doc. # 164, pp.1–3). 144 of these "Opt–In Plaintiffs" in the FLSA Class worked at Defendants' restaurant locations in Missouri. (Doc. # 144, pp. 2, 7). Plaintiff

estimates that the potential class members under the Missouri state law claims will be higher.

Given that Missouri common law prescribes a longer limitations period of five years, Mo. Rev. Stat. § 516.120, than the two-year and three-year limitations period established by the FLSA statutes, the Missouri Common Law Class—which consists of employees who worked during a five-year span—will likely encompass a broader section of potential class members than the Missouri-based plaintiffs who opted into Plaintiff's FLSA claim. Thus, the Missouri Common Law Class will likely number at least 144 members.

Plaintiff's presumption that the MMWL Class will be larger than 144 members warrants closer examination. The MMWL Class, as proposed, consists of tipped employees who worked at Defendants' Missouri restaurants during a 15–month period from February 10, 2014, to May 31, 2015. This is a smaller sub-section of the 144 Opt–In Plaintiffs who worked at Defendants' Missouri restaurants for the last three years. However, in replying to Defendants' opposition to the instant motion, Plaintiff's counsel stated that 99 "opt-in" members of the FLSA Class who worked at Missouri locations between February 10, 2014, and May 31, 2015, had been identified following a review of Defendants' payroll data. (Doc. # 153–6, ¶ 3). Plaintiff has therefore demonstrated that the MMWL Class consists of at least 99 employees. The Court also recognizes that the proposed classes, for which Rule 23 certification is sought and do not require members to "opt-in," may be substantially larger than the group of FLSA Class members who affirmatively consented to join the Section 216(b) class. *See e.g., Tyson Foods*, 136 S.Ct. at 1043 (where a "total of 444 employees joined the [FLSA] collective action, while the Rule 23 class contained 3,344 members).

Finding that the Missouri Common Law Class will likely consist of more than 144 members, and that the MMWL Class will include at least 99 members, the proposed classes are larger than other classes that

tomer was paying in cash." (Doc. # 167–1, p. 4).

have been approved for certification within this circuit. *Ark. Educ. Ass'n v. Bd. Of Educ.*, 446 F.2d 763, 765 (8th Cir. 1971) (20 class members sufficient); *Paxton v. Union Nat. Bank*, 688 F.2d 552, 561 (8th Cir. 1982) (impracticable to join some portion of the 74 black employees of defendant bank who received lesser promotions than their white counterparts). Because the anticipated class sizes of at least 99 and 144 members would render joinder impractical, the numerosity requirement of Rule 23(a)(1) has been satisfied in regard to both Missouri state law classes.

#### ii. Commonality

▪ Rule 23(a)(2) requires that "there are questions of law or fact common to the class." "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" which "does not mean merely that they have all suffered a violation of the same provision of law." *Wal-Mart*, 564 U.S. at 350, 131 S.Ct. 2541. The "claims must depend upon a common contention" and "[t]hat common contention...must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* Defendants argue that because the class action mandates individual inquiries into whether each class member was actually required to reimburse their restaurant for customer walkouts and/or cash shortages, Plaintiff has failed to prove the commonality.

▪ As noted above, however, it is not necessary that all class members suffer from the same injury as the class representatives or one another, *Rosario*, 963 F.2d at 1018, and a certified class may even include individuals who have not been injured at all by Defendant's conduct. *Kohen*, 571 F.3d at 677; *Tyson*, 136 S.Ct. at 1050; *Torres*, 835 F.3d at 1137. Here, factual and legal issues relating to when the Guest Payment Policy was enforced, whether a cash shortage policy ever existed, company-wide instructions to managers and assistant managers regarding enforcement of the policy, and the policy's legality under the Missouri minimum wage laws are common to the proposed classes and suitable for classwide adjudication. By establishing the existence of the Guest Payment Policy by a preponderance of the evidence, Plaintiff Cope has set forth a common contention that will generate common answers apt to drive the resolution of the litigation. Thus, the commonality element of 23(a)(2) is satisfied.

#### iii. Typicality

▪ Rule 23(a)(3) requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." The burden of demonstrating typicality is fairly easily met, so long as other class members have claims similar to the named plaintiff. *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995) (citing *Paxton*, 688 F.2d at 562). The claims of the entire class need not be identical, but the class representatives must generally "possess the same interest and suffer the same injury" as the unnamed class members. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). In support of the motion for class certification, Plaintiff Cope has submitted a declaration attesting to the portion of her time spent performing non-tipped work, and her reimbursement of a losses resulting from a guest walkout. (Doc. # 144-2, pp. 26–31).

In mid-to-late 2014, Plaintiff Cope states that she was required to reimburse the restaurant from her tips to cover an unpaid tab resulting from a customer walkout. (*Id.* at ¶ 17). Plaintiff Cope cites other occasions in which she was required to pay tips to cover another unpaid bill, and to reimburse the restaurant as a bartender when the "cash register was short" at the end of the night. (*Id.*). These grievances are the same or similar to the facts stated by other members of the proposed classes who have submitted declarations that are attached to this motion. (Doc. ## 144-1 to 144-3, Exhibits B–V (employee declarations)). *Donaldson v. Pillsbury Co.*, 554 F.2d 825, 830 (8th Cir. 1977) (Rule 23(a)(3) "requires a demonstration that there are other members of the class who have the same or similar grievances as the plaintiff[.]"). Having demonstrated that she generally possesses the same interest and suffered

the same injury of sub-minimum, tip-credit rates of pay as other members of the proposed classes, Plaintiff Cope is asserting claims and defenses that are typical to the claims and defenses of the proposed classes. Accordingly, the typicality requirement of Rule 23(a)(3) has been satisfied.

#### iv. Adequacy

 Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). The Court finds that Plaintiff Cope possesses the same interest and injury related to alleged violations of the MMWL and Missouri common laws as the class, has no currently discernable interests antagonistic to the interests of other class members, and is being represented by competent class counsel. *Id.* at 625–27, 117 S.Ct. 2231. Plaintiff has therefore met the adequate representation requirement of Rule 23(a)(4).

### B. Rule 23(b) Requirements

In addition to showing that the requirements of Rule 23(a) are met, the party seeking certification must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b). *Comcast, supra*, 133 S.Ct. at 1432. Plaintiff Cope asserts that this action satisfies Rule 23(b)(3), which states that:

(b) [...] A class action may be maintained if Rule 23(a) is satisfied and if:

[...]

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

### 1. Questions of Law or Common Facts Predominate

 Rule 23(b)(3) does not require a showing that questions common to the class that predominate will be answered, on the merits, in favor of the class. *Amgen, supra*, 133 S.Ct. at 1191. Instead, the requirement that common questions predominate over individual questions "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005) (quoting *Amchem, supra*, 521 U.S. at 623, 117 S.Ct. 2231). "[T]he court must look only so far as to determine whether, given the factual setting of the case, if the plaintiffs general allegations are true, common evidence could suffice to make out a prima facie case for the class." *Id.* In this matter, the questions of law and fact relating to Defendants' Guest Payment Policy, and whether Defendants' maintenance and enforcement of the same violated the Missouri Minimum Wage Act and Missouri common law, are common questions that predominate over questions affecting individual members. Although the Court recognizes that this action will necessitate a degree of individual inquiries into the harm suffered by class members—and that the parties will be compelled to collectively devise discovery mechanisms to determine the extent of damages incurred by each member—common issues relating to Defendants' adoption, implementation, and enforcement of the Guest Payment Policy still predominate this action. Classwide adjudication of such common questions will directly resolve the underlying claims of the action, and achieve judicial economy by saving the Court the time, effort, and expense incurred by unnecessary and inefficient adjudication of individual disputes. Fed. R. Civ.

P. 23(b)(3) advisory committee's note (1966) ("[s]ubdivision (b)(3) encompasses those cases in which a class action would achieve economies of time, effort, and expense, and promote [ ] uniformity of decision as to persons similarly situated...").

## 2. Class Action Is The Superior Method Of Adjudication

 This factor requires the Court to determine whether the class action is manageable, taking into consideration choice of law determinations, notice to class members, etc. *In re Baycol Prod. Litig.*, 218 F.R.D. 197, 209 (D. Minn. 2003) (involving varying state laws governing products liability) (citing *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 747 (5th Cir. 1996)). Because this matter involves common questions of fact and law relating to the same Missouri minimum wage laws and common laws, and potential class members can be ascertained by examining Defendants' payroll data, maintenance of this class would be manageable. Additionally, as noted above, individual adjudication of the more than 99 potential claims resulting from the proposed MMWL and Missouri Common Law Classes which involve common issues relating to the Guest Payment Policy presented by all members would be unrealistic and unnecessarily repetitive. Thus, the Court finds that class action would be the superior method of adjudication, and the superiority requirement of Rule 23(b)(3) is satisfied.

## C. Compliance of Class Notice with Rule 23(c)(2)(B)

In class actions based on Rule 23(b)(3), class members must be furnished with "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). In objecting to the proposed class notice, attached to the motion for class certification as Exhibit "CC," Defendants have not specified its grounds for objection—separate from its assertion that the notice cannot be issued to individuals who were not injured by Defendants' alleged conduct (*e.g.* that the proposed notice does not clearly and concisely state the nature of the action or state the claims,

issues, or defenses, or other elements of proper notice pursuant to Rule 23(c)(2)(B)). (Doc. # 147, pp. 17–18). In view of the Court's mandate to direct to class members the best practicable notice, the Court will grant Defendants' request for an opportunity to meet and confer, and in its Order will provide time for the parties to negotiate a mutually-agreeable class notice that satisfies the requirements of Rule 23(c)(2)(B). Counsel should entertain the idea of creating a website to pass along and collect information, and should also consider conducting some initial discovery with the first notice to the certified classes.

## IV. Conclusion

Based on the foregoing, Plaintiff Olivia Cope's Motion for Class Certification (Doc. # 143) is granted. Accordingly, it is hereby **ORDERED** that:

(1) Plaintiff Olivia Cope's Motion for Class Certification (Doc. # 143) is **GRANTED**;

(2) Pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3), the Court certifies Plaintiff Cope's claims under Missouri's minimum wage law and Missouri common laws to be adjudicated as a single class action. The certified classes are defined as follows:

a. All current and former servers and bartenders working at any of Defendants' Buffalo Wild Wings restaurants in Missouri who, at any time from February 10, 2014 until May 31, 2015, were paid sub-minimum, tip-credit rates of pay.

b. All current and former servers and bartenders working at any of Defendants' Buffalo Wild Wings restaurants who, at any time from February 10, 2011 until May 31, 2015, were paid sub-minimum, tip-credit rates of pay.

(3) Olivia Cope is designated as the Class Representative;

(4) Douglas M. Werman, Zachary C. Flowerree, Rowdy B. Meeks, and Steven P. Schneck will serve as Class Counsel;

(5) Defendants are directed to provide to a third-party administrator, a list all poten-

tial class members under the certified MMWL Class and the Missouri Common Law Class, including their names, last known mailing address, location(s) of employment, position(s) held, and dates of employment within thirty (30) calendar days of the entry of this Order; and

(6) The parties are directed to meet and confer within thirty (30) calendar days of the filing of this Order to agree on the proposed notice to potential class members pursuant to Federal Rule of Civil Procedure 23(c)(2)(B). The notice shall be submitted to the Court within forty (40) calendar days of the filing of this Order.

**IT IS SO ORDERED.**